**AMERICAN AIRLINES, Inc., v. AIR LINE PILOTS ASS'N, INTERNATIONAL et al.**
**Civ. No. 10611.**

United States District Court
E. D. New York.
July 6, 1950.

---

11. See also Leidy v. Connor, D.C.E.D. Pa., 70 F.Supp. 1022, involving the  Housing and Rent Control Act, 50 U.S. C.A.Appendix, § 901 et seq.

**630**

Debevoise, Plimpton & McLean, New York City (Samuel E. Gates, Malcolm A. MacIntyre, Maurice Winger, Jr., all of New York City, of counsel), for plaintiff.

Samuel J. Cohen, New York City (Samuel J. Cohen, Henry Weiss, New York City, of counsel), for defendants other than Edward G. Hamilton and David S. Little.

GALSTON, District Judge.

The motion for decision is one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in which summary judgment in plaintiff's favor is sought for the declaratory relief demanded in the complaint on the ground that there is no genuine issue as to any material fact, and that as a matter of law plaintiff is entitled to the declaratory relief prayed for.

The action is one arising under the Railway Labor Act, as amended, 45 U.S.C.A. Chap. 8, § 151 et seq. The plaintiff is a corporation engaged in interstate and foreign commerce in the common carriage by air of persons, property and mail, pursuant to certificates of public convenience and necessity issued by the Civil Aeronautics Board. The defendant, Air Line Pilots Association, International, is an unincorporated association of more than seven pilots employed by various civil air carriers, including plaintiff, engaged in scheduled air transportation. This defendant was and is the labor organization which represents pilots in the service of plaintiff.

On or about July 16, 1948 plaintiff entered into an agreement, effective July 1, 1948, entitled Agreement between American Air Lines, Inc. and the Air Line Pilots in the Service of American Airlines, Inc., as Represented by the Air Line Pilots Association, International. This agreement established rates of pay, hours of employment and other working conditions. The agreement was amended on December 10, 1948, effective July 1, 1946. The parties refer to it as the "Pilots Agreement".

It is, however, a second agreement between the American Airlines, Inc. and the Air Line Pilots in the service of the American Airlines, Inc., as represented by the Air Line Pilots Association, International, which provides that in compliance with Section 204, Title 2, of the Railway Labor Act, as amended, 45 U.S.C.A. § 184, a system board of adjustment is established for the purpose of adjusting and deciding disputes which may arise under the terms of the

Pilots Agreement which are properly submitted to it, and that this board shall be known as American Airlines Pilots' System Board of Adjustment. It is provided that the System Board shall have jurisdiction over disputes between any employee covered by the Pilots Agreement and the company, growing out of grievances or out of interpretation or application of any of the terms of the Pilots Agreement. The Board shall consider any dispute properly submitted to it by the President of the Association or by the Chief Operating Officer of the company.

On September 24, 1948 the defendants Allison, Hamilton, Little and Shoemaker were appointed as members of defendant System Board in accordance with the provisions of the agreement, and acted until on or about November 14, 1949 in hearing disputes arising under the terms of the Air Line Pilots' Agreement.

The complaint alleges that the Pilots Agreement contains no provision obligating the plaintiff to maintain a training or any other instruction program for the benefit of its line pilots. This allegation is denied by the defendants.

Line pilots in the service of plaintiff are required by company regulations, and the Civil Aeronautics Regulations, in order to demonstrate standard proficiency, to take and pass semi-annual flight checks. The defendant Carson, a line pilot in the service of the plaintiff, was given such semi-annual flight check on or about April 8, 1949 by an assistant chief pilot of the plaintiff. He failed to demonstrate the degree of proficiency required in instrument landing technique. Thereupon he was relieved of flight duty. The following day, so it is alleged in the complaint, plaintiff offered to give Carson a second flight check, which he refused. Thereafter Carson received additional training free of charge, using company facilities and equipment, and on May 2, 1949 was given a further flight check in which he demonstrated the necessary proficiency. As a result he was restored to flight duty.

Thereafter Carson instituted grievance procedure, claiming that the plaintiff was indebted to him for flight pay during the period that he was grounded, contending that plaintiff was required to maintain him at a level of proficiency required by the Civil Air Regulations and plaintiff's company standards. Following the procedure established by Section 30 of the Pilots Agreement, Carson's grievance was heard by successive company officials and relief denied.

On August 17, 1949 the defendant, Air Line Pilots Association, submitted the controversy to the defendant, System Board, asserting that plaintiff "did not have valid good cause or sufficient justification to cause (Carson's) loss of flight pay by removing him from schedule"; and shortly thereafter plaintiff made separate submission of the controversy to the System Board, averring that when a pilot is unable to demonstrate required proficiency, sufficient cause exists for relieving him from flight duties.

On September 21, 1949, the System Board conducted hearings and heard witnesses, and on January 12, 1950 issued its opinion by a vote of three to one that plaintiff was justified in relieving defendant Carson from flight duty, but that plaintiff's "failure to comply fully with the intent of Civil Air Regulation 61.540" constituted negligence, which was a heavy contributing factor to Carson's failure to pass his semi-annual flight check, and that in consequence plaintiff did not have sufficient justification for refusing to compensate Carson. Moreover, the System Board ordered that Carson be properly reimbursed.

It is the contention of the plaintiff that the decision of the System Board is erroneous and void for a number of reasons. First it is argued that it is the duty of the appropriate federal authorities, under the Civil Aeronautics Act of 1938, as amended, 49 U.S.C.A. § 401 et seq., and only of said authorities, to enforce Civil Air Regulations, and to determine whether the plaintiff, or any other air carrier, has complied with its regulations. It is also contended that the System Board has no power or authority to determine whether plaintiff complied with the Civil Air Regulations,

and that any award based on such a finding is improper and void. It is furthermore contended that if there had been a violation by plaintiff of the Civil Air Regulations, it would not constitute a breach of any obligation of plaintiff to any of the defendants under the Pilots Agreement; and finally that in the absence of some provision in the agreement, violation of the Civil Air Regulation is irrelevant and will not support the conclusion that plaintiff has been negligent to any of the pilots in its service.

■ The authority or jurisdiction of the System Board is statutory, 45 U.S.C.A. § 184. It cannot be extended by agreement of the parties, for it is not a private board of arbitration. This point is significant: first because the defendants claim that under the agreement between the parties such "grievance" as was presented to the System Board does contemplate the exercise of jurisdiction by the System Board in respect to consideration of a violation of the Civil Aeronautics Regulations; and moreover because, argue the defendants, the plaintiff in the hearings before the System Board did not raise the issue of lack of jurisdiction.

■ The Civil Aeronautics Board has primary jurisdiction to determine whether an air carrier has complied with Civil Air Regulations. American Airlines, Inc. v. Standard Air Lines, Inc., D.C., 80 F.Supp. 135; Adler v. Chicago & Southern Air Lines, Inc., D.C., 41 F.Supp. 366.

■ The challenged finding of the System Board does not explain what the Board meant by saying that the company failed to comply fully with the "intent" of Regulation 61.530 (now 61.131). The language employed is at least equivocal. It is not a decision that the plaintiff lacked proper training facilities and means for instruction for the benefit of its pilots. That clearly would have been an invasion of the jurisdiction of the Civil Aeronautics Board. Unless and until the Civil Aeronautics Board had first determined that plaintiff had violated its regulation, the System Board had no jurisdiction to make the determination. However, if the System Board's decision was on the narrower ground that though the plaintiff's training facilities and means of instruction were in compliance with the Civil Air Regulations, there was a failure on the plaintiff's part to make such facilities and instructions properly available to Carson, there would be no such invasion. In the latter instance the reference to the Civil Aeronautics Regulations would be only to an established standard. In other words, to establish by regulation, as the Civil Aeronautics Board did, a general training program applicable to all carriers, which maintains a proper balance between safety and economy in the development of air transportation, is readily recognizable as being within the scope of authority of a governmental agency such as the Civil Aeronautics Board. On the other hand the determination of whether a single pilot's loss of flight pay for being grounded as a result of failure to pass a flight check, is a different problem. Regulation No. 61.131 cannot be construed to require a carrier to set up a training program which will *guarantee* that all pilots will meet the required flight checks.

■ What the System Board meant by its finding can best be explained by the members of that Board who participated in the decision. The ambiguity existing because of the failure of the decision to recite supporting facts makes impossible the granting of a summary judgment.

Another doubtful factual situation arises out of the meaning to be given the term "grievance" as used in Section 31 of the Pilots Agreement. That calls for an interpretation of the Agreement and also a construction of the term "grievance". Only then can we say whether Carson's letter of June 13, 1949 to the Assistant Regional Superintendent of Flight of the plaintiff company states a grievance which under the Agreement may properly be presented to the System Board.

■ Thus two open questions of fact need clarification, and since a motion for summary judgment should be granted only in cases where the facts are undisputed

and nothing factual remains to be determined at the trial, this motion must be denied.

As requested by the plaintiff, the taking of depositions will be stayed for five days subsequent to the entry of an order of this motion.