Johnnie A. BROCK

v.

**The BROTHERHOOD OF SLEEPING CAR PORTERS, TRAIN, CHAIR CAR, COACH PORTERS AND ATTENDANTS et al.**

Civ. A. No. 4787.

United States District Court,
W. D. Louisiana, Shreveport Division.

March 31, 1955.

**850**

Brown & Fleniken, Shreveport, La., for plaintiff.

Simon & Carroll, Shreveport, La., Mulholland, Robie & Hickey, Toledo, Ohio, for Union defendants.

Freyer & Freyer, Shreveport, La., for defendant Pullman Company.

DAWKINS, Jr., Chief Judge.

Plaintiff here seeks to bring an action under the Railway Labor Act, 45 U.S.C. A. § 152 et seq.

Impleaded as defendants are The Pullman Company (called Pullman); Brotherhood of Sleeping Car Porters, Train, Chair Car, Coach Porters and Attendants (called Brotherhood), said to be principally domiciled in New York; its President, A. Philip Randolph, and its Secretary-Treasurer, Ashley L. Trotter, both of New York; the Shreveport, Louisiana, Local of Brotherhood (called Local); E. A. Bryant, its President, and Wesley Stewart, its Secretary-Treasurer, both of Shreveport.

The complaint alleges that Local is the locally organized unit of Brotherhood, and is composed of many members, all of whom are joined as defendants through the above-named officers. The individuals named are made defendants in both their individual and official capacities.

Brotherhood is said to be the duly authorized and designated bargaining representative of the employees of Pullman, including those employed as porters on Pullman cars, in collective bargaining as provided for by the Railway Labor Act.

Plaintiff alleges that from December 17, 1941, to October 14, 1953, he was employed by Pullman as a sleeping car porter, and was also a member of Local and Brotherhood; that membership in Brotherhood was compulsory in order that Pullman might maintain him in its employ, this being a provision of the contract between Brotherhood and Pullman; that on October 14, 1953, plaintiff was discharged by Pullman at the demand of Brotherhood, pursuant to a certain Memorandum Agreement with Pullman dated August 23, 1951; that on Septem-

ber 8, 1953, Brotherhood demanded plaintiff's discharge by Pullman " * * * without just cause, by discrimination and in violation of the obligations * *" of Brotherhood to plaintiff.

The complaint next avers that prior to October 14, 1953, plaintiff was advised by Brotherhood that he was delinquent in his dues to Local and Brotherhood, and that unless these were paid on or before that date, his dismissal would be demanded; that during 1953, "to the knowledge of all defendants herein" there was in effect a "rule, practice and agreement" providing that in any month during which a member of Local earned less than $200, he would not be required to pay dues.

It is then alleged that, when Brotherhood demanded plaintiff's discharge, there were five other members of Local who also were delinquent in dues, none of whom were discharged by Pullman, no demand having been made by Brotherhood that such be done; that plaintiff did not earn as much as $200 during any month in 1953 and, although he was not delinquent because of the "rule, practice and agreement", he was notified (the exact date not being shown) by Brotherhood that it would demand his discharge by Pullman unless he paid dues in the sum of $9 on or before October 14, 1953; that, although he was not delinquent, after returning to Shreveport from Washington, D. C., on October 12, 1953, he tried to locate Stewart, but learned he was out of town; that he then contacted Bryant in an effort to pay "the amount demanded" by Brotherhood, "and offered to him the sum of $25, reinstatement fee"; that Bryant refused to take his money and suggested that he call certain Brotherhood officials in St. Louis and Chicago, but he was unable to reach them; that on October 22, 1953, plaintiff offered $25 to Stewart, who refused to accept it; that although plaintiff was "ready, willing and able to comply" with the demand of Brotherhood for the payment of dues, his offer was refused and he was discharged "in due course".

Plaintiff claims that he was fourth in seniority on the Extra Board of Pullman when he was discharged; that "as a result of discrimination, fault, and negligence" on the part of all defendants except Pullman, he lost his job, was barred from future employment and suffered damages and lost wages; that he desires and is entitled to be reinstated to full membership in Brotherhood and Local, and to have his job with Pullman restored to him with the same seniority as if he had not been discharged. In the alternative, he alleges his entitlement to damages, for future loss of earnings, from all union defendants.

In an amended complaint, plaintiff alleges that Local, and the individual defendants, on and prior to October 14, 1953, were agents and representatives of Brotherhood; that the demand by Brotherhood for his discharge was made in writing to Pullman; and that the only reason for such demand was his alleged delinquency in payment of dues; that his discharge resulted from the demand by Brotherhood.

Taking the prayer of the complaint as the measure of the relief sought, it appears that plaintiff is seeking:

1.) Against all defendants except Pullman, a money judgment for back wages and alleged damages, totalling $11,269.84, and an injunction commanding his reinstatement to full membership in Brotherhood and Local; and

2.) Against Pullman, an injunction ordering his restoration to the same employment in the same position on its seniority list as he would have held had he not been discharged.

3.) Alternatively, and if it is not ordered that he be reinstated by Pullman, that he be awarded damages in the sum of $25,396.80, for loss of future earnings, against all defendants except Pullman.

Pullman has answered, generally denying plaintiff's allegations, for lack of "sufficient information". It prays that his demands against it be rejected, and that it "be permitted to withdraw from these proceedings". All other defendants

have moved to dismiss the complaint for lack of jurisdiction, and for failure to state a claim upon which relief can be granted.

■ We note at the threshold that plaintiff claims "discrimination", by the Union and its representatives, against him as an individual, based on his admitted failure to pay dues, and not because of his race or color, as was the case in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen, etc., 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Graham v. Brotherhood of Locomotive Firemen, etc., 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22, and Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283. In fact, although the record does not show it, we feel we are justified in judicially noticing that plaintiff, and all—or practically all —of the officers and members of Brotherhood and Local are members of the Negro race. Consequently, there is not presented here, as there was in Steele, Tunstall, Graham and Howard, a case of attempted discrimination, by virtue of a collective bargaining agreement invalid on its face, against a minority class as such. All we have before us is a claim of "discrimination", in refusing to give him the benefit of an alleged local rule or practice, said by plaintiff to have excused him from paying dues because he had earned less than $200 per month. He does not allege by what authority, if any, such local rule or practice came into being, nor does he advance any theory as to how it could have been binding on Brotherhood, by estoppel or otherwise.

■ Because it involves a primary question of jurisdiction, we shall dispose first of plaintiff's prayer for relief against Pullman. Although that defendant has answered the suit, and has not filed a plea to the jurisdiction, it is our duty to notice an absence of jurisdiction and to dismiss *sua sponte* if it is lacking.[1] We do not have jurisdiction of this part of plaintiff's suit because 1) neither Federal nor State courts can handle claims for reinstatement to employment with a carrier, this being within the *exclusive* province, first, of the tribunals, and by the procedures, provided for in the agreement between Brotherhood and Pullman, and then of the National Railroad Adjustment Board;[2] and 2) plaintiff has not elected to treat himself as a wrongfully discharged employee, suing only for damages, Moore v. Illinois Cent. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, but has joined in one suit a claim for damages with another seeking restoration of his job and seniority. Such misjoinder, and failure to elect, destroys any jurisdiction which otherwise might exist as to the damage claim only.[3] Accordingly, on our own motion, plaintiff's suit against Pullman must be dismissed for lack of jurisdiction.

■ We next consider plaintiff's claim for restoration to membership in

1. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263; United R. R. Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d 938.

2. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Ry. Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811; Order of Ry. Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; Alabaugh v. B. & O. R. Co., D.C., 125 F.Supp. 401, and authorities therein cited; Hettenbaugh v. Airline Pilots Ass'n Int., 5 Cir., 189 F.2d 319.

3. Walters v. Chicago & N. W. R. Co., 7 Cir., 216 F.2d 332; Buster v. Chicago, M., St. P. & P. R. Co., 7 Cir., 195 F.2d 73;

Broady v. Illinois Cent. R. Co., 7 Cir., 191 F.2d 73, certiorari denied 342 U.S. 897, 72 S.Ct. 231, 96 L.Ed. 672, and cases therein cited. See also Hayes v. Union Pac. R. Co., 9 Cir., 184 F.2d 337, certiorari denied 340 U.S. 942, 71 S.Ct. 506, 95 L.Ed. 680; Kendall v. Pennsylvania R. Co., D.C., 94 F.Supp. 875; Van Zandt v. Railway Express Agency, D.C., 99 F. Supp. 520; Butler v. Thompson, 8 Cir., 192 F.2d 831; Priest v. Chicago, etc., R. Co., 8 Cir., 189 F.2d 813; Newman v. Baltimore & O. Ry. Co., 3 Cir., 191 F.2d 560; Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia Ry. Co., 5 Cir., 199 F.2d 384; Alabaugh v. Baltimore & O. R. Co., D.C., 125 F.Supp. 401.

Brotherhood and Local. There is nothing in the Railway Labor Act, and plaintiff has cited no other Federal law, which requires a union, designated as an exclusive bargaining agent for a class or craft of employees of a carrier, to accept into membership, or to restore to membership, any person; and the Act does not create a right in any person to join, or reacquire membership in, such a union. 45 U.S.C.A. § 152, Eleventh, provides that refusal by such a union to admit an employee to membership, or expulsion from membership, *for any reason other than nonpayment of dues, etc.*, relieves such employee from becoming or remaining a member of the union as a condition of his employment. This is simply another way of saying that, if the employee fails to pay his dues, he may be discharged on request of the union, and that is exactly what plaintiff alleges happened to him. Hence plaintiff's claim in this respect does not arise under a Federal law or Constitutional provision, and does not meet the jurisdictional requirements of 28 U.S.C. § 1331. Likewise, he cannot show that we have jurisdiction of the claim on grounds of diversity of citizenship, 28 U.S.C. § 1332, because there is not complete diversity between plaintiff and all defendants: he is a citizen of Louisiana, two of the four individual defendants are also, and Brotherhood is an unincorporated association having no citizenship except that of its members, Hettenbaugh v. Airline Pilots Ass'n, Int., supra, who are citizens of all States, including Louisiana. Likewise, Local is an unincorporated association, all of whose members presumably are citizens of this State. Since we have no jurisdiction under either of the cited sections of the Judicial Code, this claim must be dismissed.

For the same reasons we do not have jurisdiction of the primary claim for back wages and damages, or the alternative claim for damages. These claims may exist, if at all, only on the basis of the Union's constitution, bylaws, charter or other governing rules, or by virtue of tort liability. Thus any rights plaintiff might have for back wages or damages would be *ex contractu* or *ex delicto*, or both, and would not arise under any Federal Constitutional provisions or statutes. Hence, we could have jurisdiction only under the Diversity Statute and, as we have shown, there is no diversity here. For that reason the claims for back wages and damages must be dismissed.

Furthermore, even if this were not so, and notwithstanding the liberality of the Federal Rules of Civil Procedure, 28 U.S.C.A., regarding so-called "notice" pleadings, plaintiff's suit fails to allege essential facts showing legal liability for back wages or damages. He affirmatively admits he paid no dues during 1953, but seeks to excuse this on the basis of an alleged "rule, practice and agreement" of Local. He claims there were " * * * at least five (5) members of the Shreveport Local who were delinquent in the payment of dues, if plaintiff was delinquent at the time, and, none of these other members were discharged by the Pullman Company; and, no such demand for discharge was made by the defendants, as was made for the discharge of Petitioner". The extent of arrearages in dues of the "other" employees is not shown, and the provisions of Brotherhood's constitution prescribing the dues to be paid, and penalties for nonpayment, are not set forth. Unless by the terms of the constitution his obligation to pay dues was conditioned upon a total or substantial absence of dues delinquencies on the part of other members of Brotherhood, he would have been obligated to pay them regardless of what was done or not done by some of his fellow members. There is no allegation that the "rule, practice or agreement" relied on has been approved or ratified, or that it otherwise is or could have been binding on Brotherhood. Likewise, there is no showing that Brotherhood, or any of the Union defendants could have prevented plaintiff's discharge by accepting his delinquent dues after September 8, 1953, when demand for his discharge was made; or that they could have effected

854

his reinstatement with Pullman by accepting dues tendered by him on October 22, 1953, eight days after his discharge. His right to employment with Pullman, and any rights under the union shop agreement, were purely contractual. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788. They could arise only under this agreement. Yet, plaintiff has failed to show the pertinent terms of the agreement which control his employment rights. It was his duty to plead them factually and not in the form of bare conclusions. Finally, his complaint fails to show whether or why Union defendants were under any obligation to accept dues from a delinquent member.

Plaintiff has not seen fit to amend or supplement his complaint so as to set forth these essential allegations, despite pendency of the motion to dismiss. The full purport of the motion long since has been disclosed in briefs and oral arguments supporting it. We must conclude, therefore, that plaintiff cannot supply these factual deficiencies in his complaint or he would have done so.

The only authorities plaintiff has cited and relied on are Steele, Tunstall and Graham. Those decisions are not in point. They involved contracts between unions and carriers which patently were invalid in their discrimination against Negro employees solely because of their race. Plaintiff does not allege any such character of discrimination here, and indeed makes no attack of any kind upon the contract between Brotherhood and Pullman. In fact, he seems to urge its over-all validity. The gravamen of his complaint, rather, is as to interpretation or application of the contract in the light of the circumstances involved in his own case. Being so directed, he must find recourse, if he is entitled to it, through the processes provided for in the contract or at the hands of the National Railroad Adjustment Board, which has the power, if it finds plaintiff was improperly discharged, to order reinstatement with back pay. 45

U.S.C. § 153, First, (o); Alabaugh v. Baltimore & O. R. Co., D.C., 125 F.Supp. 401, 409.

In the language of Judge Holmes, in Hettenbaugh v. Airline Pilots Ass'n Int., 5 Cir., 189 F.2d 319, 321:

"The Congress did not, by the Railway Labor Act, grant jurisdiction to the federal courts to afford relief for breaches of performance of collective bargaining agreements. Appropriate quasi-judicial tribunals have been established for that purpose. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. It is only when collective bargaining agreements are unlawfully entered into, or when the agreements themselves are unlawful in terms or effect, that federal courts may act."

For the reasons given, the motion to dismiss is Sustained, the claim against Pullman is Dismissed ex proprio motu, and the entire suit is Dismissed.