Vincent P. **BRADY**, Plaintiff,

v.

**TRANS WORLD AIRLINES**, Inc., a corporation of the State of Delaware, and The International Association of Machinists, an unincorporated association, Defendants.

**Civ. A. No. 1884.**

United States District Court
D. Delaware.

Oct. 5, 1957.

Irving Morris (of Cohen & Morris), Wilmington, Del., for plaintiff.

Stephen E. Hamilton, Jr. (of Richards, Layton & Finger), Wilmington, Del., and Edward R. Neaher, New York City, p.h.v., for defendant Trans World Airlines, Inc.

H. Albert Young, Wilmington, Del., and Edward J. Hickey, Jr., Washington, D. C., p.h.v., for defendant International Ass'n of Machinists.

LEAHY, Chief Judge.

The facts appearing from the paper record show: In 1948 plaintiff, Vincent P. Brady, became a member of The International Association of Machinists

("IAM") an unincorporated association, District Lodge No. 142, Local Lodge No. 1244, located in Wilmington, Delaware. Brady lived there. In February 1951, he was recalled by Trans World Airlines, Inc. ("TWA"), a Delaware corporation, for work in Philadelphia. In August 1952, he became a member of Local Lodge No. 1776 of the IAM in Philadelphia. On March 28, 1956, he was notified by the union he was in default on certain payments for dues and a reinstatement fee and the sum theretofore tendered by him was insufficient to cover this amount.[1]

On April 24, 1956, and May 5, 1956, Brady wrote to the System Board of Adjustment requesting a hearing, but without prejudice to his rights to file a subsequent court proceeding.[2] Hearings were held by the Board in Kansas City, Missouri, on May 4 and 14, 1956. He had notice of these hearings. He did not attend. On May 14, 1956, the Board decided adversely to Brady.[3] On May 15, 1956, he was discharged from employment by TWA pursuant to the collective bargaining agreement between TWA and IAM which required good standing membership in the union as a condition of employment.[4]

On February 4, 1957, Brady wrote to the Board and requested reconsideration of its decision, alleging that Cliff Miller, General Chairman, District 142 of IAM, who appeared at the hearing of May 14, 1956, on behalf of IAM, misrepresented vital facts to the Board.[5] The Board denied this request and affirmed its May 14, 1956, decision as final and binding.[6] On April 22, 1957, Brady then brought his action to this court against both TWA and IAM seeking 1. reversal of the decision of the Board, 2. reinstatement of employment with payment to him of all wages, overtime pay, and vacation pay since his discharge, 3. reinstatement of all other benefits held by him as an employee including a $15,000 life insurance policy, a sickness and benefit policy, credit union privileges, retirement benefits and seniority status, 4. judgment against either or both defendants for damages for humiliation and embarrassment suffered, 5. judgment for damages suffered by reason of the discharge without just cause by TWA, 6. allowance of a reasonable attorney's fee, and 7. such other relief as the court would deem proper.

Defendants' original motions were ones under Fed.Rules Civ.Proc. rule 12(b), 28 U.S.C. to dismiss plaintiff's action for lack of jurisdiction of the court over the subject matter of the complaint and for failure to state a claim upon which relief can be granted. In the light of developments at oral argument, counsel for both defendants requested the court to treat their motions as ones for summary judgment under FR 56(b).

## I.

The Railway Labor Act, 45 U.S.C.A. § 151 et seq., originally passed in 1926, was amended ten years later to embrace carriers by air.[7] A look at the early cases under the Act is helpful to pinpoint the issues here.

1. The leading case of the Supreme Court in this area is Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. After discharge by the Illinois Central Railroad, Moore, an employee, refused the jurisdiction of the

---

1. Letter of March 28, 1956, from Gerald C. Coleman, Financial Secretary of Local Lodge No. 1776, IAM, to Vincent P. Brady.

2. Letters of April 24, 1956, and May 5, 1956, from Vincent P. Brady to the TWA-IAM System Board of Adjustment, Kansas City, Missouri.

3. Order dated May 14, 1956.

4. Article XXVI(a).

5. Letter of February 4, 1957, from Vin-

cent P. Brady to the TWA-IAM System Board of Adjustment, Kansas City, Missouri.

6. Letter of February 14, 1957, from the TWA-IAM System Board of Adjustment to Vincent P. Brady.

7. The complete story of the Act is available elsewhere. See Garrison, "The National Railroad Adjustment Board: A Unique Administrative Agency", 46 Yale L.J. 567, et seq.

Adjustment Board, which had been set up as a board of review in 1934. Instead, he accepted his discharge as final and then brought suit in the state court for common law breach of contract. The action was transferred to the federal district court on diversity. When it reached the Supreme Court, it was held "petitioner was not required by the Railway Labor Act [8] to seek adjustment of his controversy [with the railroad] as a prerequisite to suit for wrongful discharge." 312 U.S. 630, 636, 61 S.Ct. 754, 756. The Act, said the Court, did not require an administrative finding before the filing of suit, nor did it remove the jurisdiction of the courts to determine the controversy.

Subsequently, in Slocum v. Delaware, Lackawanna & Western R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, the Court, in denying the power of any court to invade the jurisdiction conferred on the Adjustment Board by the Act, specifically ruled the Moore case inapposite since interpretation there of a collective bargaining agreement provision had no binding effect on future interpretations by the Board. Thus, it was held whereas the Adjustment Board had exclusive jurisdiction to adjust grievances and jurisdictional disputes of the type involved in Slocum, it did not have exclusive jurisdiction over the claim of an employee that he had been unlawfully discharged. The Moore case stood firm.

2. Although Moore came up on diversity of citizenship, no question arose of the employee's failure to exhaust remedies available under the employment contract when the state law of the forum required it. When it did, a host of problems were precipitated. Koppal, a discharged employee, bypassed, as Moore did, his right to an appeal before the Adjustment Board and elected to bring to the federal district court upon diversity, an action for wrongful discharge of employment. The jury returned a verdict for plaintiff, but after motion, the trial court set aside the verdict and dismissed the complaint, apparently impressed with the contention the administrative remedies under the employment contract, which were comparable to those described in the Railway Labor Act, had not been exhausted by the plaintiff, as required by the state law of Missouri.

The Eighth Circuit reversed [9] on this ratio: The administrative adjustment of disputes did not have their source in or subject to appraisement on the basis of state law, but were questions relating solely to the federal Act; the nature of these provisions under the Act were settled by the Supreme Court in the Moore case, which was controlling. In the words of Judge Johnsen:

"In the face of this declaration and construction, Missouri would not, of course, be at liberty to hold contrarily that the adjustment provisions of a contract made under and pursuant to the Railway Labor Act were compulsory in nature and constituted conditions precedent to the right to sue for wrongful discharge in an employment relationship covered by the Act. Missouri law applicable to employment relationships would be without application to relationships under the Railway Labor Act, at least within the field of any matters regulated by the Act. So far as a suit for wrongful discharge is concerned, the administrative remedies prescribed by the Act and incorporated in a contract made

8. 45 U.S.C.A. § 153, First (i) provides:
"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

9. Koppal v. Transcontinental & Western Air, Inc., 8 Cir., 199 F.2d 117.

under it would therefore have to be treated by the Missouri courts, for justiciable purposes in their forum, the same as a situation under Missouri law of a contract in which no administrative adjustment provisions were contained." [10]

The dissenting judge (Riddick, J.) concluded that exhaustion of remedies was a matter of substantive law which the forum could legitimately exact in a federal diversity case:

"It is true that in the Moore case the Supreme Court said that the right of an employee to sue an employer for damages for breach of a collective bargaining agreement of employment was not dependent upon the prior exhaustion of the employee's administrative remedies under the Railway Labor Act. But to give that statement the meaning which the majority attribute to it is to lift it out of context and to ignore the difference ·in character between rights and remedies available to an employee before the Adjustment Board under a contract made pursuant to the Railway Labor Act, and those available to him in a common law action for damages for breach of such a contract. * * * Since a proceeding under the Railway Labor Act before the Adjustment Board and an action at law in a District Court for damages for breach of contract are wholly different in character, assert different rights, and seek different remedies, in separate tribunals of mutually exclusive jurisdiction, it can not be said that before resorting to one action the litigant must first resort to the other. Where either action is available, the litigant has his choice. That is all the Moore case stands for. It certainly does not stand for the proposition that in an action for damages for breach of a Missouri contract, tried in a District Court in Missouri whose juris-diction is based solely upon diversity of citizenship and the sum in controversy, the substantive law of Missouri is not controlling." [11]

3. The Supreme Court reversed the Court of Appeals and affirmed the District Court. Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325. In doing so, the Court's attention was drawn not to the impact of a federal act but to the demands of state substantive law. Thus, in the best tradition of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, it was announced (per Mr. Justice Burton for the Court [with Mr. Justice Douglas dissenting]) 345 U.S. at page 662, 73 S.Ct. at page 910:

" * * * if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so. Here respondent was employed by a carrier, subject to Title II of the Railway Labor Act, and his employment contract contained many administrative steps for his relief, all of which were consistent with that Act. Accordingly, while he was free to resort to the courts for relief, he was there required by the law of Missouri to show that he had exhausted the very administrative procedure contemplated by the Railway Labor Act. In the instant case, he was not able to do so and his complaint was properly dismissed."

The Moore case gave to the employee the legal right of choosing his course of relief—either the Adjustment Board or an independent action. Ostensibly, Koppal only conditioned the employee's legal right; in effect, it undermined it. The saving feature implied in Koppal, that the declared formality of exhaustion would in no way prejudice the employee in the bringing of an action, where that was his choice, proved almost worthless.

10. 199 F.2d at page 123.

11. 199 F.2d at pages 126–127.

Practical application of the Court's decision by the lower courts, exampled in Bower v. Eastern Airlines, Inc., 3 Cir., 214 F.2d 623, became, for the discharged employee, a hazardous and even losing game.

4. Bower was discharged by his employer and, for reasons to be developed, appealed to the Adjustment Board. The appeal proved unavailing. Bower then brought an action for wrongful discharge in the federal district court asserting diversity jurisdiction. The District Court dismissed the complaint, and the Third Circuit affirmed on the ground the appeal before the Board was a voluntary election, and, therefore, the Board's determination was "final and binding" under the provisions of the Railway Labor Act.[12] The Court (per Hastie, J.) wrote, 214 F.2d at page 626:

> " * * * Whether we say that the party is bound by his own voluntary election between an administrative and an alternative judicial remedy, or describe the party who initiated the administrative proceeding as estopped from denying its agreed final and binding character, or view this as an application of the rationale of *res judicata* in a

new area, we are satisfied that the court should declare and enforce a rule of repose against the reexamination of the merits of plaintiff's claim in this case."

Bower raised the cry, expected, that the Koppal case necessitated the employee taking an administrative appeal before instituting suit, but the Court of Appeals disagreed. Koppal, like Moore, our Circuit said, "merely recognizes the duty of a federal court in a diversity action for wrongful termination of employment to require the plaintiff to show whatever exhaustion of administrative remedy may be prerequisite to suit under the procedural[13] law of the forum." Investigating the law of Pennsylvania, the Court could isolate nothing there to suggest a suit for wrongful termination of employment must be preceded by any administrative procedure beyond an unqualified dismissal that is not further reviewable within the employer's organization. Thus, it was judged, Bower did not have to obtain an Adjustment Board ruling on his contentions before invoking the jurisdiction of the district court. In short, on this question, Bower had misunderstood Koppal in thinking it required in every instance exhaustion

12. 45 U.S.C.A. § 184 provides, in part:

"The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on April 10, 1936 before the National Labor Relations Board, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

"It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of sections 181–188 of this title, to establish a board of adjustment of jurisdiction not exceeding the

jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title."

45 U.S.C.A. § 153, First (m) provides:

"(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award. In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."

13. The reference to "procedural" is not altogether squared with either the language of the dissenting opinion of the Court of Appeals in Koppal, supra note 11, or the language of the majority opinion of the Supreme Court in 345 U.S. 653, at pages 656–657, 73 S.Ct. 906, at pages 907–908.

of remedies, and, even had Bower correctly read Moore and Koppal on exhaustion, his move to go before the Board was binding on him because, as it turned out, Pennsylvania law did not in fact require it.[14]

5. Although the freely chosen alternative, stated in Moore and undisturbed in Slocum, has been impeded under Koppal,[15] the employee is not entirely on the defensive for this attitude has unleashed possibly new devices, equally undesirable. In those states unmistakenly requiring the exhaustion of remedies under the employment contract, the employee is awarded more than the alternative Moore intended to give him. He cannot only go before the Adjustment Board for reinstatement, but, if unsuccessful, thereafter bring suit for wrongful discharge asserting he looked to the Board only in deference to the niceties of state law, citing the authority of the Supreme Court in Koppal. Absent state requirement, he is bound to make a choice.

Whereas the discharged employee should be guided by simple procedures geared to the sensitivities of his hardship, in reality he has been subjected to the rigors of a guessing game. The difficulty is that the decision of the Supreme Court in Moore and its holding in Koppal are, when served, barely digestible in the same system. Beyond that, it may be asked whether the law has removed itself from the arena of common sense by adopting in the upper reaches an unrealistic approach. To put the Socratic question, does the employee who has been discharged, being thus of an uneven mind—hounded by the realization of loss of job and support for his family for an indefinite period; overwhelmed by the bigness of Organization—Union, Carrier—seemingly, and even actually, banded against him;[16] pressured by the increasing awareness he has so little time to act to seek job restoration;[17] and induced by the thought the Adjustment Board is the quickest, and even sole, means of doing so—grasp for relief almost blindly ignorant in most cases of his legal position? In any event, if indeed, a choice must be made, is that the selective and measured act for which he is later to be judged and refused admittance in the court house door?

## II.

1. Facts of the case at bar do not quickly fall into any of the slots discussed. However, certain avenues, referred to in Bower, have been left open for the employee to exploit even after appeal adversely to the Adjustment Board.[18] It is toward these ends that

---

14. See, on this score, the dissent of Judge Brown in Sigfred v. Pan American World Airways, Inc., 5 Cir., 230 F.2d 13, 19 et seq.

15. Most recent is a decision of the Supreme Court in Brotherhood of Railroad Trainmen v. Chicago River & Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed. 2d 622. The issue was whether a railway labor organization can resort to a strike over matters pending before the Adjustment Board. In holding it could not, the present Chief Justice, speaking for a unanimous eight-man court, asserted the Railway Labor Act, and specifically 45 U.S.C.A. § 153, First (i) and (m), *supra*, notes 8 and 12, literally means what it says—that a dispute may be referred to the appropriate Adjustment Board at the election of either party, in either which case the Board's decision becomes final and binding upon all parties concerned. (The Court went

on to hold that the District Court had jurisdiction for injunctive relief notwithstanding the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101, 115). This fresh discussion, as applied here—that is, the effect of the carrier, not the aggrieved employee, invoking the jurisdiction of the Board on the apparent ability of the employee to maintain his independent action—could mean new barriers for the employee to cross.

16. Collective bargaining agreements usually provide, as does the agreement in the case at bar between TWA and IAM, supra note 4, that good standing in the union is a condition of employment with the carrier.

17 Three days in the case at bar. Article XXVI(f) of the TWA-IAM Agreement, infra the text of this opinion.

18. Described in these terms: "This does not foreclose the consideration of ques-

plaintiff is moving. His contentions in attacking these motions are that because of a provision of the employment contract, Brady was deprived of a freely decided election to which he was entitled, and because of the alleged fraud perpetrated upon Brady and the Board of Adjustment their proceedings were robbed of essential fairness. Therefore, it is urged this court has the power to review the merits of plaintiff's case, reverse or affirm the Board's decision, and grant or deny the further relief requested in the complaint.

2. I first take up the question of whether Brady was deprived of his right to free selection as between appeal to the Adjustment Board and an independent action, since it may be dispositive of many entangling issues involved. This is in line with the permissive area of review defined by the Third Circuit in the Bower case.

Plaintiff refers to Article XXVI(f) of the TWA-IAM Agreement, which provides:

"If the employee discharged or to be discharged under this Article contends that he is not properly subject to discharge under the terms of this Article, he may protest such action to the TWA-IAM System Board of Adjustment provided that such protest in writing is mailed to the Board within three (3) days after the date the employee is notified of such action. This protest shall be submitted in duplicate to the Chairman, TWA-IAM System Board of Adjustment, with one copy to be mailed in care of the Vice-President of Industrial Relations, TWA, Room 207 Administration Building, Municipal Airport, Kansas City, Missouri, and the other copy to be mailed in care of the General Chairman, IAM, Room 1019 Rialto Building, Kansas City, Missouri. Both copies shall be sent by registered mail, return receipt requested. The date of receipt of such written protest by the party with the representative who is Chairman of the System Board of Adjustment shall be considered as the date of receipt of the protest by the Board. *In the event no protest is so filed within the above time limits, the action will be considered as proper and will be final and binding upon all parties concerned.* Within five (5) days of receipt of such a protest, the System Board of Adjustment will meet and consider the dispute * * *." (Italics supplied.)

Since the agreement was made and entered into in accordance with the provisions of the Railway Labor Act, as amended, the policy declared therein is paramount. From a plain reading of Article XXVI(f) it is evident that if a discharged employee filed no protest with the System Board of Adjustment, his discharge would, by virtue of his failure, be conclusive upon him. Such a provision is a far cry from what the Supreme Court held in the Moore case and reaffirmed in Koppal as to the solidarity of the employee's position. In the eyes of Brady, any discharged employee, it could do no other but mislead. I find the effect of Article XXVI(f) of the TWA-IAM Agreement entirely vitiated the freedom of action to which the discharged employee was entitled in choosing his course.[19] While the fact that Brady did

tions of jurisdiction or of the essential fairness of the administrative proceeding, even when these issues are raised collaterally." Bower v. Eastern Airlines, Inc., 3 Cir., 214 F.2d 623, 626.

19. Indicative of the confusion engendered even to parties familiar with the procedural aspects of an appeal is the situation in the case at bar. Formal notification of discharge did not reach Brady until May 4, 1956. The Agreement provides, in Article XXVI(f), that the protest must be mailed to the System Board of Adjustment within three days thereof, and that hearing must be held within five days after receipt. Brady, by letter of April 24, 1956, to the Board requested an appeal. The Chairman of the Board replied by letter of April 30, 1956, in which he set May 4, 1956, as the date for hearing. After presentation of all the evidence at the hearing

expressly condition his appeal to the Adjustment Board [20] does not thereby reserve any rights to him, as plaintiff has argued, it does indicate the existence of a coercive force operating on the discharged employee's free selection of alternatives and his own meager effort to counteract that force. Consequently, a free election must be deemed as being nullified under these circumstances.[21]

3. It thus remains to determine where plaintiff now stands in this suit. No case is known to this court in which a ruling of an Adjustment Board has been stricken down on the grounds left to us in the Bower case. However, in view of the nature of the cause, it can only be that the appeal by the discharged employee to the System Board of Adjustment must be considered as never having been entered at all. Plaintiff's position, therefore, with respect to the allegations of fraud and all other matters bearing on the decision of the Board, is bypassed. Brady will be given the opportunity to elect he never had.

Whether plaintiff chooses to pursue his appeal to the Board, or to commence an independent action is a decision left, of course, to him. It is noted, however, that should he start suit for wrongful discharge in the state court of Delaware, he must be prepared to meet the challenge of exhausting remedies, if Delaware so requires, as heretofore discussed; if he should elect to sue in federal court, the usual jurisdictional requirements must be satisfied.

4. Defendants' motions are denied. I will entertain an order not inconsistent with this opinion either staying this action or dismissing it without prejudice, the date from which plaintiff has, in accordance with the provisions of the TWA-IAM Agreement, three days to select his forum.

Plaintiff submit order.

on that date (the hearing was centrally located for employees—Kansas City, Missouri) the Board ruled that since Brady did not receive formal notification of discharge until May 4, 1956, his request for appeal of April 24, 1956, was premature. Consequently, Brady was obliged to write again to the Adjustment Board within three days of May 4, 1956. He did so by letter of May 5, 1956, which was received on May 9, 1956, thus necessitating a hearing on or before May 15, 1956. A hearing was held on May 14, 1956. Brady was discharged on May 15, 1956.

20. Letters of April 24, 1956, and May 5,

1956, from Vincent P. Brady to the TWA-IAM System Board of Adjustment, Kansas City, Missouri.

21. The importance of adhering to Article XXVI(f) was stressed by the Adjustment Board itself in its ruling of May 4, 1956, which at that time not properly before it and granted additional time to Brady to perfect it. Said the Board: "The Board calls your attention to Article XXVI(f) 'In the event no protest is so filed within the above time limits, the action (discharge) will be considered as proper and will be final and binding upon all parties concerned.'"