**VINCENT P. BRADY, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., a corporation of the State of Delaware, and The International Association of Machinists, an unincorporated association, Defendants.**

**Civ. A. 1884.**

United States District Court
D. Delaware.

Oct. 28, 1958.

Irving Morris (of Cohen & Morris) Wilmington, Del., for plaintiff.

Stephen E. Hamilton, Jr. (of Richards, Layton & Finger) Wilmington, Del., Edward R. Neaher and Arthur M. Wisehart, New York City (of Chadbourne, Parke, Whiteside & Wolff) New York City, of counsel, for defendant, Trans World Airlines, Inc.

H. Albert Young and Bruce M. Stargatt, Wilmington, Del., Edward J. Hickey, Jr., and James L. Highsaw, Jr. (of Mulholland, Robie & Hickey) and Plato E. Papps, General Counsel The International Association of Machinists, Washington, D. C., of counsel, for defendant, The International Association of Machinists.

CALEB M. WRIGHT, Chief Judge.

■ This matter is before the court on reargument of the decision rendered in Brady v. Trans World Airlines, Inc.,[1] directed primarily to the impact the recent Supreme Court pronouncement in Conley v. Gibson[2] had upon the Brady determination. Consenting to rehear counsel is a proper exercise of this court's discretion since Judge Leahy, the author of the Brady decision, by reason of retirement was "unavailable" within the purview of United States v. Wheeler.[3] It is, however, with a great deal of restraint and deference that reargument has been ordered in view of Judge Leahy's able opinion.

The issues raised by the parties have been exhaustively explored and for purposes of delineation will be briefly set forth and considered seriatim:

I. Does the System Board of Adjustment (Board) have jurisdiction over the premises?

II. Assuming (I) is answered in the negative, what is the scope of federal jurisdiction absent diversity of citizenship?

III. Has a federal cause of action been properly pleaded?

I

■ The initial inquiry pertaining to jurisdiction of the Board is resolved by Conley v. Gibson.[4] There the Supreme Court precisely stated:[5]

"We hold that it was error for the courts below to dismiss the complaint for lack of jurisdiction. They took the position that § 3 First (i) of the Railway Labor Act conferred exclusive jurisdiction on the Adjust-

1. D.C.Del.1957, 156 F.Supp. 82.

2. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

3. 3 Cir., 1958, 256 F.2d 745, 747.
"* * * We pointed out that other exceptional circumstances of unavailability of the first judge would be if he had died or resigned; it was obvious in these situations that if the petition for reconsideration were to be heard at all, it would have to be by another judge."
It is important to note that no order was entered by Judge Leahy.

Note 2, supra. See also Hargrove v. Brotherhood of Locomotive Engineers, D.C.1953, 116 F.Supp. 3; Brotherhood of Railroad Trainmen v. Luckie, Tex. Civ.App.1955, 286 S.W.2d 712; Rose, The Railway Labor Act and the Jurisdiction of the Courts, 8 Lab.L.J. 9 (1957).

5. 1957, 355 U.S. 41, 44, 78 S.Ct. 99, 101, 2 L.Ed.2d 80. § 3 First (i) of the Railway Labor Act (45 U.S.C.A. § 153) has no application to carriers by air (Title II, § 201, 45 U.S.C.A. § 181), however, the identical language herein pertinent is found in Title II, § 204, first par. (45 U.S.C.A. § 184):
"The disputes between an employee or group of employees and a carrier

ment Board because the case, in their view, involved the interpretation and application of the collective bargaining agreement. But § 3 First (i) by its own terms applies only to 'disputes between an employee or group of employees and a carrier or carriers.' This case involves no dispute between employee and employer but to the contrary is a suit by employees against the bargaining agent to enforce their statutory right not to be unfairly discriminated against by it in bargaining."

Although plaintiff's complaint leaves much to be desired, it is clearly discernible that plaintiff's controversy is with his bargaining agent and not employer, notwithstanding that the employer is joined in the action to accord complete relief. The series of events noted in Judge Leahy's opinion disclose that the Board heard the case and rendered its verdict prior to Brady's dismissal.[6] Thus the Board could only have determined Brady's claim viz a viz the Brotherhood.[7]

The fact that the dispute might encompass construction of the collective bargaining agreement is deemed entirely irrelevant for unless the controversy is between employee and employer the Board is simply without jurisdiction[8] and no agreement of the parties can extend its authority.[9]

The court in resolving this issue is not unmindful of the caveat noted in United Railroad Operating Crafts v. Wyer, namely, "* * * it is a fantastic thought that every employee who is discharged under a union shop agreement can run to Court about it."[10] This argument was effectively rebutted in 8 Lab.L.J. at page 69:

"* * * The district court's (Wyer Court) indifference to the rights of the workers is shocking for it further said that 'it is a fantastic thought that every employee who is discharged under a union shop agreement can run to court about it.'

"If it is a violation of the statute, why is it fantastic? Since when

---

or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes."

Thus it is apparent that the Conley construction of § 3 First (i) Title I has similar application to Title II § 204 ¶ 1 (45 U.S.C.A. § 184).

6. "* * * On May 14, 1956, the Board decided adversely to Brady. On May 15, 1956, he was discharged from employment by TWA pursuant to the collective bargaining agreement between TWA and IAM which required good standing membership in the union as a condition of employment." 156 F.Supp. 82, 83.

7. See 8 Lab.L.J. at page 59:
"However, if it is the situation where a hearing shows to the employer's satisfaction that the employee is not a member of the union, and the employer acquiesces in the union's demand, the dispute is not between the employee and the carrier, but between the employee and the union which is disputing his membership and pressing for the discharge. The union shop contract is solely for the advantage of the union and, in all probability, the employer would do nothing about discharging the allegedly delinquent employee until prodded by the union."

8. 45 U.S.C.A. § 184: "The disputes between an employee or group of employees and a carrier or carriers by air * * *."

9. "The authority or jurisdiction of the System Board is statutory, 45 U.S.C.A. § 184. It cannot be extended by agreement of the parties, for it is not a private board of arbitration." American Airlines v. Air Line Pilots Ass'n, D.C.E.D.N.Y.1950, 91 F.Supp. 629, 632.

10. United Railroad Operating Crafts v. Wyer, D.C.S.D.N.Y.1953, 115 F.Supp. 359, 365.

have the courts become so much more important than the citizens whose rights they must redress? Has the court become callous as to the worker's rights? Possibly these cases will make the reader wonder." (Parenthesis supplied.)

Nor is the court impervious to the advantages derived from having expertise and uniformity in the resolution of labor matters especially where the determination involves future conduct.[11] It is not thought, however, that denial of Board jurisdiction in the instant proceeding will tend to foment labor strife.[12]

Of the policy to be served the most persuasive argument is that which attacks the Board under the factual setting herein presented for the inherent bias engendered by its composition of members representing exclusively management and union. Article XII(b) of the TWA-IAM collective bargaining agreement provides:

"The System Board of Adjustment shall consist of four (4) members, two (2) selected by the Company and two (2) selected by the Union."

It is simply repugnant to our standards of fundamental fairness and totally unrealistic to require an employee to submit a dispute he has with his bargaining agent for final determination to persons selected by and representing the bargaining agent. The decisional law and the legal literature are replete with condemnation of this practice.[13]

## II and III

Unfortunately, concluding that the Board lacked authority to determine Brady's claim does not materially advance the jurisdictional inquiry for

---

11. Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L. Ed. 795. Alabaugh v. Baltimore & Ohio R. Co., 4 Cir., 1955, 222 F.2d 861.

12. Note 11, supra.

13. "* * * Indeed, it might be difficult to find a constitutional basis for relegating this controversy to the Railway Adjustment Board as contended by defendants, and such procedure appears particularly abhorrent when it is considered that the defendants named herein participate in making the selections of membership on the Board, who would pass upon the validity of their acts charged to be in disregard of the trust imposed upon them." Hargrove v. Brotherhood of Locomotive Engineers, D.C., 1953, 116 F.Supp. 3, 9.

"* * * We can only answer that in that event there is a public interest in the impartial protection of any rights granted by an Act of Congress that transcends the immunity of labor disputes from all surveillance by a court of law." Rychlik v. Pennsylvania R. Co., 2 Cir., 1956, 229 F.2d 171, 175, reversed on other grounds, 1957, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480.

In Dr. Bonham's Case, 8 Co.Rep. 114a, 2 Brownl. 255, 77 Eng.Rep. 647 (C.P. 1610), the defendant was fined by the President and Censors of the Royal College of Physicians, pursuant to a statute, for practicing medicine without a proper license. The statute gave half the fine to the Royal College of Physicians. In holding this fine invalid Lord Coke said:

"* * * The censors cannot be judges, ministers, and parties; judges to give sentence or judgment; ministers to make summons; and parties to have the moiety of the forfeiture, *quia aliquis non debet esse Judex in propria causa, imo iniquum est aliquem suae rei esse judicem;* and one cannot be Judge and attorney for any of the parties, * * *. And it appears in our books, that in many cases, the common law will controul Acts of Parliament, and sometimes adjudge them to be utterly void: for when an Act of Parliament is against common right and reason, or repugnant, or impossible to be performed, the common law will controul it, and adjudge such Act to be void; * *."

See also Steele v. Louisville & Nashville R. Co., 1944, 323 U.S. 192, 65 S. Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood, of Locomotive Firemen & Enginemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Tumey v. State of Ohio, 1927, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749; Edwards v. Capital Airlines, 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, certiorari denied 338 U.S. 885, 70 S.Ct. 186, 188, 94 L.Ed. 543; Brotherhood of Railroad Trainmen v. Luckie, Tex.Civ.App.1955, 286 S.W.2d 712; Rose, Railway Labor Act and Jurisdiction of the Courts, 8 Lab.L.J. 9 (1957); 40 Harv.L.Rev. 30 (1926).

plaintiff seeks more than simply upsetting the Board's judgment.[14] Since diversity of citizenship is lacking the additional relief requested can only be accorded in this forum if a cause of action correctly invoking 28 U.S.C.A. § 1331 or § 1337 has been asserted.

The claim as it now reads, resolving all doubts in favor of the pleader, is in need of amendment for it is seriously questioned whether little more than an action sounding ex delicto or ex contractu has been formulated.[15] At oral argument plaintiff expressly requested permission to assert by amended complaint conduct which would set forth a cause within the purview of Conley.[16]

The court subscribes to plaintiff's contention that Conley v. Gibson [17] should not be limited to its facts but encompasses all forms of discrimination whether it be racial or not. The case law which has attempted to limit redress in federal courts to racial discrimination [18] is less persuasive to this court than the decisions and literature which oppose the placing of an arbitrary restriction.[19] There is no justifiable reason without invoking constitutional mandates to so limit federal relief where predicated solely on a federal statute.[20] In Hargrove v. Brotherhood of Locomotive Engineers the language of Judge Pine is particularly appropriate and is in the court's estimation, a complete answer to any attempt to restrict court supervision of the RLA to racial discrimination:[21]

"Although the Steele and related cases involved racial discrimination, an analysis of the opinions makes it clear that jurisdiction of the courts was not dependent on that element

14. Complaint, pp. 6–7:
"Wherefore, plaintiff seeks the following relief:
"I. An order of this Court reversing the decision of the SBA, dated May 14, 1956.
"II. An order directing TWA to reinstate Brady as an employee with payment to him of all wages, overtime pay and vacation pay since May 15, 1956, with reinstatement of Brady to all other benefits he held as an employee of TWA including the $15,000.00 life insurance policy, the sickness and benefit policy, credit union privileges, retirement benefits and his seniority status retroactive to October 1, 1946 undiminished by the time since May 15, 1956.
"III. A judgment against IAM and/or TWA for damages for the humiliation and embarrassment suffered by Brady by reason of his illegal discharge.
"IV. A judgment for damages suffered by Brady by reason of the discharge without just cause by TWA.
"V. The allowance of a reasonable attorney's fee which shall be taxed and collected as a part of the costs of this suit.
"VI. Such other, further and different relief as the Court may deem just and proper in the premises."

15. Brock v. Brotherhood of Sleeping Car Porters, D.C.W.D.La.1955, 129 F.Supp. 849.

16. Note 2, supra.

17. Note 2, supra.

18. Alabaugh v. Baltimore & Ohio R. Co., 4 Cir., 1955, 222 F.2d 861; Spires v. Southern Ry. Co., 4 Cir., 1953, 204 F. 2d 453; Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 1953, 206 F.2d 9, certiorari denied, 1954, 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422.

19. Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 1955, 226 F.2d 604, certiorari denied, 1956, 350 U.S. 967, 76 S.Ct. 436, 100 L. Ed. 839; Hargrove v. Brotherhood of Locomotive Engineers, D.C.1953, 116 F. Supp. 3; 8 Lab.L.J. 9 (1957); see also dissenting opinion in Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, at page 776, 72 S.Ct. 1022, at page 1026, 96 L.Ed. 1283.
"* * * It would have been the same if the Brotherhood had discriminated against him on some other ground, unrelated to race. It was the Brotherhood's duty 'to act on behalf of all the employees which, by virtue of the statute, it undertakes to represent.'"

20. Steele v. Louisville & Nashville R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173.

21. D.C., 116 F.Supp. 3, 9. See also discussion of the Hargrove decision in Brotherhood of Railroad Trainmen v. Luckie, Tex.Civ.App.1955, 286 S.W.2d 712, 716.

**474**

exclusively, but related to their power to determine whether or not the statutory duty to represent all of the employees equally had been met. Compare Ford Motor Co. v. Huffman, 345 U.S. 330 [73 S.Ct. 681, 97 L.Ed. 1048] where no racial question was involved."

Further the court is of the opinion that the authority cited by defendants for the proposition that the bargaining agent's responsibility is merely to refrain from executing agreements unlawful on their face, in terms or effect[22] directly conflicts with the language of Conley stated below:[23]

> " * * * A contract may be fair and impartial on its face yet administered in such a way, with the active or tacit consent of the union, as to be flagrantly discriminatory as against some members of the bargaining unit."

Thus little weight and consideration have been afforded these decisions for it is fair to infer from the aforementioned quotation that discriminatory practices in administering the bargaining agreement are federally condemned.[24]

Accordingly, plaintiff is granted leave to amend pursuant to the course indicated at oral argument. TWA will be retained as a party defendant as a precautionary measure to insure plaintiff complete relief in the event he sustains his burden.[25] In view of the foregoing, there is no substance to defendant TWA's contention that the complaint is deficient for non-joinder of the System Board of Adjustment.

An order may be submitted.

---

22. Hettenbaugh v. Airline Pilots Ass'n International, 5 Cir., 1951, 189 F.2d 319; United R.R. Operating Crafts v. Northern Pacific Ry. Co., 9 Cir., 1953, 208 F.2d 135, certiorari denied 347 U.S. 929, 74 S.Ct. 529, 98 L.Ed. 1081.

23. 355 U.S. 41, 46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

24. Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80; see also Richardson v. Texas & New Orleans R. Co., 5 Cir., 1957, 242 F.2d 230.

25. Richardson v. Texas & New Orleans R. Co., 5 Cir., 1957, 242 F.2d 230. Article XXVI (p) of the TWA–IAM agreement is further reason for not dismissing TWA as a party defendant:

> "The Union shall indemnify and save the Company harmless against all forms of liability that shall arise out of or by reason of action taken by the Company, which action was requested by the Union under the provisions of this Article (Union Security)." (Parenthesis supplied)