**HARGROVE et al. v. BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al.**

Civ. No. 2639–53.

United States District Court, District of Columbia.

Nov. 3, 1953.

Dickson R. Loos, Merrill Shephard, Chicago, Ill., and Willis S. Ryza, Washington, D. C., Pope, Ballard & Loos, Washington, D. C., William H. Billings, Kennett, Mo., of counsel, for plaintiffs.

Edward J. Hickey, Jr., Washington, D. C., Mulholland, Robie & Hickey, Washington, D. C., of counsel, for defendants.

PINE, District Judge.

This is a motion to dismiss the complaint on the ground (1) that the court lacks jurisdiction over the subject matter of the action, and (2) that the complaint fails to state a claim upon which relief can be granted.

Plaintiffs are two individuals who sue on behalf of themselves and other persons similarly situated. Defendants are the Louisville & Nashville R. R. Co., the Brotherhood of Locomotive Engineers, and the Brotherhood of Locomotive Firemen and Enginemen. The Railroad Co. moved to quash the purported service of process made upon it on the ground that it was not "doing business" in the District of Columbia, and its mo-

tion was granted. This leaves the two brotherhoods as the only defendants, and it is their motion which is now before me.

According to the complaint, the following facts appear: Plaintiffs were employed by the Railroad Co. from July 1, 1946, to September 1, 1949, one as a locomotive engineer and the other as a locomotive fireman. They were members in good standing of their respective brotherhoods, defendants herein, at all times material to this proceeding. There are many other persons similarly situated who are so numerous as to make it impracticable to bring them all before the court.

During 1942 and 1943 the United States acquired land in Tennessee, which became known as the Oak Ridge Project for the development of atomic energy. On the land so acquired, the United States constructed railroad tracks and other facilities for the switching and movement of engines and cars. Prior to July 1, 1946, this activity was performed by the United States through contractors. One of the contractors was Stone and Webster Engineering Company. Plaintiff Hargrove was employed at this project by this company as a locomotive fireman from December 1942 to February 1943, and as a locomotive engineer from February 1943 to July 1, 1946. Plaintiff Broome was employed at this project by this company as a locomotive fireman from June 1, 1943, to September 15, 1943, and as a locomotive engineer from September 15, 1943, to July 1, 1946. By virtue of their employment, plaintiffs acquired seniority rights not only as firemen but as engineers within the classes of employees performing such services within the Oak Ridge Reservation.

On July 1, 1946, the Railroad Co. entered into a contract with the United States whereby it agreed to operate the tracks and facilities within the Reservation, and on the same date the defendant Brotherhoods, as the sole and exclusive bargaining representatives of the engineers and firemen in a unit of all such employees within the Reservation, entered into a collective bargaining agreement with the Railroad Co. This agreement concerned wages, hours, and working conditions of engineers and firemen employed by the Railroad within the Reservation, and provided in part that all engineers and firemen retained by the Railroad Co. after a 31-day probationary period would continue their employment in that capacity; that the employees so retained would accrue no rights on the Railroad Co. or any subdivision thereof, but would be given preference in their respective crafts based on seniority among themselves to regular positions which were in existence within the Reservation on July 31, 1946; that new assignments and re-established service would be manned by firemen and engineers employed by the Railroad Co. on its Knoxville and Atlanta Division, subject, however, to the preference rights of the retained operating personnel; that crews regularly assigned to service within the Reservation would not be permitted to perform any service outside this area; and that the rights of the engineers and firemen under the agreement would terminate concurrently with the termination of the contract between the Railroad Co. and the United States.

In accordance with the provisions of this collective bargaining agreement, plaintiffs and other members of the class within the bargaining unit exercised their preference seniority rights to bid for available positions with the Railroad Co. solely within the Reservation. Following the 31-day probationary period, during which defendant Railroad Co. determined that plaintiffs and others were qualified, assignments were made to regular positions within the Reservation, one of the plaintiffs being employed as engineer and the other as fireman from July 1, 1946, to September 1, 1949, and other members of the class were employed for the same period in like positions. Throughout this period, they per-

formed their work satisfactorily and accrued seniority rights applicable solely to the positions within the Reservation.

On August 26, 1949, defendant Brotherhoods proposed to the Railroad Co. that the 1946 collective bargaining agreement be canceled and terminated. The Railroad Co. agreed to this proposal, and the defendants declared that the agreement was no longer in effect and that all rights acquired thereunder by the employees within the Oak Ridge Reservation, were abolished.

On September 1, 1949, the Railroad Co., relying on the termination of the agreement, discharged plaintiffs and all others similarly situated and has refused and continued to refuse to acknowledge their seniority and other rights as well as repeated demands made by them for restitution of back pay and reinstatement to their previous positions within the Reservation. Instead, the Railroad Co. has filled the positions previously held by plaintiffs with railroad employees who, as members of the defendant Brotherhoods, had previously accrued seniority rights on the Knoxville and Atlanta Division of the Railroad Co., but who had not at any time prior to their replacement of plaintiffs acquired any seniority status to positions within the Oak Ridge Reservation.

During the period when the 1946 agreement was in effect and at the time of its cancelation, defendant Brotherhoods, also represented for purposes of collective bargaining the engineers and firemen employed by the Railroad on its Knoxville and Atlanta Division, and such employees were by the terms of the agreement made subject to the preferential seniority rights of the plaintiffs and others similarly situated with respect to positions within the Oak Ridge Reservation, but they did accrue seniority and other rights with the Railroad Co. outside the Reservation, which rights were denied to firemen and engineers operating trains within the Reservation.

In the course of negotiating and obtaining the cancelation of the 1946 agreement and in negotiating and executing subsequent collective bargaining agreements with the Railroad Co., defendant Brotherhoods did not seek or obtain any rights or benefits on behalf of plaintiffs and others similarly situated, as a result of which they were denied any contractual right to continue in their former positions based on previously acquired seniority, and the positions theretofore occupied by the plaintiffs and others within the Oak Ridge Reservation became exclusively available to the engineers and firemen of the Railroad Co. employed on the Knoxville and Atlanta Division.

It is further alleged that, in canceling the 1946 agreement and executing the subsequent agreements which deprived plaintiffs and others similarly situated of the right to continue their employment with the Railroad Co. within the Oak Ridge Reservation, the defendant Brotherhoods "completely and arbitrarily disregarded the legal duty, obligation and trust imposed upon them by the Railway Labor Act to equitably and in good faith bargain and act as sole and exclusive bargaining representative for and on behalf of the interests and rights of plaintiffs and other members of their class and in the course of such conduct defendant Brotherhoods unlawfully and arbitrarily discriminated against plaintiffs and others in like position with them by acting solely and exclusively for and on behalf of the firemen and engineers of the Knoxville and Atlanta Division of defendant Railroad Co. all in violation of the legal duty to protect equally, equitably and in good faith the interests of all the employees represented by said defendant Brotherhoods without arbitrarily sacrificing all of the rights of one unit of employees for the sole benefit of another group of employees."

It is further alleged that the engineers and firemen within the Oak Ridge Reservation were the only ones who were denied seniority rights and made ineligible to bid on the jobs they previously held, and that this discriminatory treatment of employees formerly employed within the Oak Ridge Reserva-

tion as compared to those employed outside the Reservation was not in any way based on differences relevant to authorized and reasonable purposes of collective bargaining, such as seniority, the type of work performed, or the competence and skill with which it was performed, but was based solely on the geographical location of the jobs involved and the fact that the plaintiffs received their initial employment with the Railroad Co. as members of existing personnel when the Railroad Co. assumed the operation of the tracks and facilities within the Reservation.

Plaintiffs furthermore assert the invalidity of the cancelation agreement and the agreements subsequently made to replace the canceled agreement, set forth their injuries, and pray, among other things, that the defendants be enjoined from complying with the agreements to cancel the 1946 agreement, and that defendant Brotherhoods be enjoined from acting as the collective bargaining representatives of the plaintiffs or the firemen and engineers employed by the Railroad Co. within the Reservation so long as they shall not represent or act fairly on behalf of all the employees of the Railroad, including plaintiffs, or shall discriminate against them. They also pray for reinstatement and money damages.

The first point raised is whether the court lacks jurisdiction over the subject matter by reason of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., more particularly Sec. 3, First (i) thereof, as the same has been applied and construed by the courts, it being defendant's contention that jurisdiction over this dispute is vested solely in the Railway Adjustment Board. Sec. 3, First (i) of the Act reads as follows:

"(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."

As will be noted, this statute provides a remedy by administrative procedures for the settlement of the disputes described therein, and the Supreme Court has held that the remedy provided is exclusive. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors of America v. Southern Ry. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811. The jurisdictional question, therefore, is whether the instant case comes within the purview of the statute. Looking first to its language, it will be noted that it is confined "to disputes between * * * employees and a carrier." This dispute in its present posture is not one between employees and a carrier, but between members of labor unions and their unions. The statute is also confined to disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." This dispute concerns neither an interpretation or application of agreements nor rates of pay, rules, or working conditions. Instead, the complaint charges an arbitrary breach of duty and trust and arbitrary discrimination by defendant Brotherhoods against plaintiffs in contravention of the Railway Labor Act. The statute, therefore, would appear to have no application if read literally.

Turning next to the Supreme Court cases cited by defendants in support of their contention of lack of jurisdiction in the courts, it need only be stated that those cases, differing from the instant case, involved disputes between employees and carriers, and concerned interpretation of agreements, thereby bringing them within the reach of the statute. To elaborate, the Slocum case, supra, was an action brought by the

Railroad against two unions, concerning a dispute over the scope of their respective agreements with the railroad, the latter agreeing with one of them. The court pointed out that it was not confronted with any disagreement or conflict in interest between an employee and his bargaining representative, and held that "the jurisdiction of the Board to adjust grievances and disputes of the type *here* [there] involved is exclusive." [339 U.S. 239, 70 S.Ct. 580.] (Italics supplied.) The quotation discloses the care with which the Supreme Court limited the opinion to cases strictly within the compass of the statute. In the Railway Conductors case, supra, the other case cited by defendants, the dispute was between certain conductors and the railroad concerning the railroad's obligation under the collective bargaining agreement to give conductors extra pay for certain services. The railroad brought suit for declaratory judgment in a state court for an interpretation of the agreement, and the Supreme Court held that the court was without power to interpret the terms of this agreement and adjudicate the dispute. The inapplicability of the ruling in these cases would seem to be apparent, but the defendants contend that two Circuit Courts of Appeals have entertained a different view, and cite in that connection Spires v. Southern Ry. Co., 4 Cir., 204 F.2d 453 and Colbert v. Brotherhood of R. R. Trainmen, 9 Cir., 206 F.2d 9. The Spires case, supra, was a suit brought by 13 engineers employed by the railway company. It sought a declaratory judgment as to their seniority rights with respect to the operation of a certain freight train, which had been the subject of an agreement between the railway company and its employees in 1916 which was modified at the request of the brotherhood in 1951, to the alleged detriment of plaintiffs' seniority rights. The Court of Appeals for the Fourth Circuit, in affirming an order dismissing the suit for lack of jurisdiction, held that the case dealt with the manning of a particular job as between road men and yard men, and involved working conditions; that it did not involve the discharge of plaintiffs or the violation of any contract; that the only rights which plaintiffs claimed to have been violated were seniority rights arising out of a collective bargaining agreement which had been modified and which was subject to modification by subsequent collective bargaining, and that their grievance was unfair treatment in the agreement which had been entered into by their agent. That is far different from the case at bar. Here no working conditions are involved. Here plaintiffs have been discharged. Here, to be sure, no violation of a contract is asserted, but the attack is on the illegal cancelation of one. Here no unfair modification of a contract is before the court. Instead, plaintiffs have no contract, and the charge is that defendants have sacrificed their interests and rights, not on the basis of differences relevant to authorized and reasonable purposes of collective bargaining, but solely for the benefit of another group of employees represented by them, thereby violating the duties and obligations imposed upon the Brotherhoods by the Railway Labor Act.

The Colbert case, supra, the second case referred to by defendants, was a suit for injunction and declaratory relief by employees of the Pacific Electric Railway Co., whose seniority status was alleged to have been injuriously affected by a collective bargaining agreement between the union and the employer, and the court affirmed an order dismissing the case as one involving the interpretation of this agreement and therefore within the scope of the Railway Labor Act. Further, it was held that there was no adequate showing that the injuries complained of were caused by irrelevant discrimination. I have accordingly come to the conclusion that the Spires and Colbert cases, as I read them and in the context of their facts, do not support defendant's contention.

The case before me, therefore, does not come within the literal reading of the statute requiring the dispute to be

**8**

settlea on an administrative level, does not come within the scope of its coverage as construed by the cases principally relied on by defendant, and does not come within the design of the statute to repose exclusively in an expert tribunal the prompt and orderly settlement of complicated disputes concerning rates of pay, rules, and working conditions and the interpretation or application of agreements covering the same.

Rather, it would appear to fall clearly within the ambit of Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S. Ct. 226, 232, 89 L.Ed. 173, and the cases following it,[1] where the courts are held to have jurisdiction over actions of the character here involved. In the Steele case the question presented was whether the Labor Act imposes upon a labor organization acting by authority of the statute as the exclusive bargaining representative of a class or craft of employees the duty to represent all the employees in the craft without discrimination because of their race, and if so, whether the courts have jurisdiction to protect the minority of the craft or class from the violation of such obligation. In this case, the discrimination, while not racial, is just as arbitrary, if the facts alleged in the complaint are established, and for the purpose of this motion they must be assumed to be true. In the Steele case the petitioner, a Negro and locomotive fireman, sued on his own behalf and that of his fellow employees who were Negro firemen employed by the railroad. The respondent Brotherhood was the exclusive bargaining representative of the craft of firemen. The Brotherhood, purporting to act as representative of the entire craft of firemen, served a notice on the railroad of a desire to amend the existing collective bargaining agreement in such manner as ultimately to exclude all Negro firemen from the service. The court in its opinion stated "that the Railway Labor Act imposes upon the statutory representative of a craft at least as exacting a duty to protect equally the interests of the members of the craft as the Constitution imposes upon a legislature to give equal protection to the interests of those for whom it legislates", and that "Congress has seen fit to clothe the bargaining representative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents * * but it has also imposed on the representative a corresponding duty", namely "to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." The Court further held that "this does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented"; that "variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit"; but "that the statutory power to represent a craft and to make contracts as to wages, hours and working conditions does not include the authority to make among members of the craft discriminations not based on such relevant differences", and that "discriminations based on race alone are obviously irrelevant and invidious." Here the discriminations based on prior employment and geography alone are also irrelevant and invidious. The Court therefore held that it was within the province of the Judiciary to take jurisdiction of the controversy and that it was not one within

---

1. Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. Graham v. Brotherhood of Locomotive Firemen and Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22. Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

the exclusive jurisdiction of the Adjustment Board.

Although the Steele and related cases involved racial discrimination, an analysis of the opinions makes it clear that jurisdiction of the courts was not dependent on that element exclusively, but related to their power to determine whether or not the statutory duty to represent all of the employees equally had been met. Compare Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, where no racial question was involved.

█ I am therefore of the opinion that the complaint states a case in which the court is not lacking in jurisdiction over the subject matter, and furthermore, under the authority of Steele v. Louisville & Nashville R. Co., supra, the complaint states a claim upon which relief can be granted. Indeed, it might be difficult to find a constitutional basis for relegating this controversy to the Railway Adjustment Board as contended by defendants, and such procedure appears particularly abhorrent when it is considered that the defendants named herein participate in making the selections of membership on the Board, who would pass upon the validity of their acts charged to be in disregard of the trust imposed upon them.

Accordingly, the motion to dismiss will be denied. Counsel will submit appropriate order.