309 F.2d 584
 Walter J. TROTTER and George D. Slabaugh for Themselves and
for and in Behalf of Eugene Zynda, et al.,
Plaintiffs-Appellants,
v.
AMALGAMATED ASSOCIATION OF STREET ELECTRIC RAILWAY and MOTOR
COACH EMPLOYEESOF AMERICA, DIVISION 1303; Amalgamated
Association of Street, Electric Railwayand Motor Coach
Employees of America, AFL-CIO, Defendants-Appellees.
 No. 14770.
 United States Court of Appeals Sixth Circuit.
 Nov. 9, 1962.
 
 Dee Edwards, Detroit, Mich., for appellants.
 Argued by and on brief Ralph W. Cole, Detroit, Mich., for Division 1303.
 Thomas F. Chawke, Detroit, Mich., for Amalgamated Assn. of Street Electric Railway and Motor Coach Employees of America, AFL-CIO.
 Before MILLER, Circuit Judge, and BOYD and McNAMEE, District Judges.
 SHACKELFORD MILLER, Jr., Circuit Judge.
 
 
 1
 Central Greyhound Lines, hereinafter referred to as Greyhound, owned and operated three suburban bus lines or divisions in the Detroit, Michigan, area and also an interstate highway division out of Detroit. Each of these four divisions constituted a separate seniority district. Prior to May 1, 1953, its bus drivers had seniority only in the district where they worked, with no right of interchange of seniority between the suburban districts or between a suburban district and the highway district. If a driver wanted to work in another district, suburban or highway, he started in as a new man at the bottom of the seniority roster in that district.
 
 
 2
 The defendant union, as bargaining agent for the Greyhound employees, included in the collective bargaining agreement of May 1, 1953, an interchange of seniority provision, which provided that highway drivers hired prior to that date, transferring to a suburban division, would have a seniority date as of May 1, 1953, on the suburban seniority roster, and suburban drivers hired prior to that date would have a seniority date of May 1, 1953, on the highway roster and on each of the other suburban seniority rosters. This seniority provision was continued in each subsequent collective bargaining agreement between the union and Greyhound and was in effect on March 1, 1958.
 
 
 3
 On March 1, 1958, Greyhound sold its suburban lines to Great Lakes Transit Company, hereinafter referred to as Great Lakes. While negotiations for the sale were pending the union officers became concerned about the job rights of its members and the possibility that Great Lakes would not hire the Greyhound suburban drivers, and entered into negotiations for the purpose of safeguarding the rights of these employees. As a result of its efforts, Great Lakes agreed to hire all or any of the suburban drivers who elected to become its employees and assumed the contractual obligations of the employer under the collective bargaining agreement then in force. Greyhound and Great Lakes granted the drivers a period of 90 days in which to decide, each for himself, whether he wanted to continue on the suburban work as an employee of Great Lakes with his existing seniority rights or whether to transfer to the highway district of Greyhound with seniority rights in that district as provided by the collective bargaining agreement of May 1, 1953.
 
 
 4
 Of approximately 190 suburban drivers at the time of sale, approximately 61 of them elected to transfer to the Greyhound hound highway district. They obtained seniority in the highway operation as of May 1, 1953, in accordance with the May 1, 1953, bargaining agreement. The remaining suburban drivers elected to remain on the suburban districts as employees of Great Lakes. They have had steady employment since then with the seniority which they had as employees of Greyhound.
 
 
 5
 This action was filed as a class action by two of the suburban drivers who transferred to the Greyhound highway district. The complaint alleges that as a result of the sale, the number of bus drivers employed and to be employed by Greyhound had been reduced and that it was incumbent upon the union to negotiate an agreement with Greyhound which would fairly apportion the remaining jobs among all the employees of Greyhound, but that the union, notwithstanding its duties to fairly and indiscriminately represent all the Greyhound employees, had failed to do so and had arbitrarily agreed with Greyhound that the plaintiffs shall not be permitted to exercise seniority rights on the remaining jobs based on a seniority date earlier than May 1, 1953. The complaint alleges that this agreement did not reflect relevant factors such as total seniority, safety records, employment history and other pertinent matters, and thus unjustly discriminated against the plaintiffs with reference to seniority and other job rights in favor of the highway drivers. The complaint asks that the union be enjoined from causing Greyhound to discriminate against them in their employment, and that Greyhound be enjoined from giving any force and effect whatsoever to any agreement limiting the seniority of plaintiffs, or any of them, to May 1, 1953, in assignment of work, leaves of absence or any other incidents of their employment based on seniority.
 
 
 6
 The District Judge held that the seniority rights of the plaintiffs were derived from and controlled by the provision of the collective bargaining agreement of May 1, 1953, Aeronautical Lodge v. Campbell, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513, and that there was no competent proof of a breach of the duty of fair representation of the membership of the union in connection with the sale of March 1, 1958. He entered judgment dismissing the complaint.
 
 
 7
 Appellants rely strongly upon Steele v. L. & N.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, Mount v. Grand International Brotherhood of Loc. Eng., 226 F.2d 604, C.A. 6th, cert. denied, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839 and Hargrove v. Brotherhood of Locomotive Engineers, 116 F.Supp. 3, D.C. These cases are examples of the now well settled rule that the bargaining representative of employees has the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against any employee or group of employees. Whether the bargaining representative has acted fairly and impartially and without hostile discrimination depends upon the facts of each case. As was said in Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048:
 
 
 8
 'Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.'
 
 
 9
 In the present case the suburban drivers acquired certain seniority rights in the highway district by the collective bargaining agreement of May 1, 1953, which they did not have before. The sale of the suburban operations in 1958 did not destroy those rights. The suburban drivers who elected to transfer to the highway district did so with seniority rights as provided by the bargaining agreement of May 1, 1953. They were not required to transfer and those who did not elect to transfer retained their existing seniority rights as suburban drivers and have had steady employment with Great Lakes since then. Appellants' real complaint appears to be, not that any existing seniority rights were taken frm them or that other suburban drivers acquired rights which were not available to them, but that in connection with the sale they did not acquire better seniority rights than they already had under the May 1, 1953, bargaining agreement. We do not think that this constituted discrimination against them within in the meaning of Steele v. L. & N.R. Co.,supra, and Ford Motor Co. v. Huffman, supra.
 
 
 10
 Appellants also contend that under the provisions of Section 163 of the Constitution of the union they are entitled to greater seniority rights than they now have under the bargaining agreement of May 1,1953. This section reads in part as follows:
 
 
 11
 'In case of a reduction in the forces of labor on any street railway or bus system affecting the employes who are members of this Association, the rules of reduction shall be as follows: * * *.'
 
 
 12
 The claim is made that the sale of the suburban lines constituted 'a reduction in the forces of labor' and that their rights are those provided by the provisions of that section instead of by the bargaining agreement of May 1, 1953. We are of the opinion that the sale of the suburban lines did not constitute 'a reduction in the forces of labor' within the meaning of that section.
 
 
 13
 The judgment is affirmed.