372 F.2d 829
 John BALOWSKI, Plaintiff-Appellee,
v.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, (UAW), AFL-CIO, and Its Local Union No. 735, Defendants-Appellants.
John BALOWSKI, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellant.
 No. 17059.
 No. 17060.
 United States Court of Appeals Sixth Circuit.
 February 20, 1967.
 
 Stephen I. Schlossberg, Detroit, Mich. (Joseph L. Rauh, Jr., John A. Fillion, Jordan Rossen, Bernard F. Ashe, Michael S. Friedman, Detroit, Mich., on the brief), for International Union and others.
 Eugene L. Hartwig, Detroit, Mich. (Aloysius F. Power, Harry S. Benjamin, Jr., K. Douglas Mann, Eugene L. Hartwig, George Cherpelis, Detroit, Mich., on the brief), for General Motors Corp.
 Dee Edwards, Detroit, Mich., for appellee.
 Before PHILLIPS and PECK, Circuit Judges, and FOX, District Judge.*
 HARRY PHILLIPS, Circuit Judge.
 
 
 1
 This is an interlocutory appeal under 28 U.S.C. § 1292(b) from the order of the district court denying defendants' motions for summary judgment.[1] The action was filed against General Motors Corporation and the international and local Unions, UAW, AFL-CIO, under § 301 (a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). The parties will be referred to as they appeared in the district court.
 
 
 2
 Plaintiff, an employee of General Motors, had acquired certain seniority rights as a journeyman tinsmith. He took medical leave in 1957 because of a physical disability. In 1958 his reinstatement application with General Motors was denied after a medical examination, on the ground that he was unable to perform the duties of his former job classification. In 1959 plaintiff caused a grievance to be filed by the local Union.
 
 
 3
 The collective bargaining agreement between General Motors and the United Automobile Workers provided for a detailed four-step grievance procedure which terminated in final and binding arbitration of employee grievances before either an impartial umpire, or by a mutually agreed upon independent physician, depending upon the type of grievance filed.
 
 
 4
 Step one of the grievance procedure required the presentation of the grievance to the shop foreman; step two required the grievance to be referred to the shop committee; step three was an appeal to the corporation and the international union; and step four was an appeal to an impartial umpire.
 
 
 5
 Plaintiff's grievance remained at the third step of the grievance procedure until 1961. Following a discussion of the grievance at the Appeal Committee and management's refusal to accede to the demands made therein, the Union made a timely appeal of the case to the impartial umpire. Thereafter at the request of the Union the grievance was returned to the second step of the grievance procedure, ultimately reaching the umpire stage in December 1961.
 
 
 6
 In September 1961 plaintiff had filed suit against General Motors in the district court under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), seeking to join the international and local Unions as involuntary plaintiffs. In that action plaintiff demanded arbitration in accordance with the collective bargaining agreement. The district court dismissed that suit in January 1962 for lack of jurisdiction, on the ground that the grievance procedure prescribed by the collective bargaining agreement had not yet been exhausted.
 
 
 7
 In April 1962, in accordance with the provisions of the collective bargaining agreement, the grievance was submitted to an independent physician, who was mutually acceptable to General Motors and the Union, for a final and binding determination as to whether plaintiff was able to perform the duties of the journeyman tinsmith classification, his former position.
 
 
 8
 Based upon his examination of plaintiff, the physician found that plaintiff was unable to perform the duties of this job classification. The Union withdrew the grievance of plaintiff at that time.
 
 
 9
 Plaintiff then brought this suit demanding $350,000 in damages against General Motors and the international and local Unions, alleging (1) that the referral of his grievance to the arbitrator was a sham since it was not reasonably contemporaneous with his application to return to work and that the question submitted to the arbitrator was not the same question as presented by the grievance; (2) that defendant Unions breached their duty to process plaintiff's grievance promptly, diligently and in good faith; and (3) that defendant General Motors breached plaintiff's rights under the collective bargaining agreement by failing, refusing and neglecting to permit plaintiff to resume his employment. The district court denied the motions of General Motors and the Unions for summary judgment. This appeal under 29 U.S.C. § 1292(b) ensued.
 
 1) The Arbitration Decision
 
 10
 The principal contention of plaintiff is that the question presented in the grievance which he filed in 1959 was not the same question which was presented to the impartial physician in 1962. He asserts that the question is whether he was physically able to perform the duties of his job classification and therefore entitled to reinstatement in 1958, whereas the question presented to the physician was whether he was able to return to work in 1962, the time of the submission of the question to arbitration. The Unions and General Motors take the position that the decision of the arbitrator is binding and conclusive upon plaintiff and that this question cannot be relitigated by an action under § 301.
 
 
 11
 As was said in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403:
 
 
 12
 "Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d), states, `Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."[2]
 
 
 13
 Further "[a]rbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement." (Emphasis added.) 363 U.S. at 567, 80 S.Ct. at 1346.
 
 The Court further said:
 
 14
 "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. * * * The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." 363 U.S. at 567-568, 80 S.Ct. at 1346.
 
 
 15
 As said in Republic Steel Corp. v. Maddox, 379 U.S. 650, 653, 85 S.Ct. 614, 617, 13 L.Ed.2d 580. "If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement."
 
 
 16
 To like effect see Local 174 Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593.
 
 
 17
 With regard to the finality of an arbitrator's award the Supreme Court has stated that:
 
 
 18
 "This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. * * * [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424.
 
 
 19
 Paragraph 43(b) of the collective bargaining agreement between General Motors and the Unions provide that the arbitrator's decision (in this case an independent physician's decision), "with respect to whether the employee is or is not able to do a job to which he is entitled in line with his seniority shall be final and binding upon the Union, the employee involved and the Corporation."[3] This is what was bargained for by the parties to the collective bargaining agreement. We re-emphasize that in his first action, plaintiff demanded arbitration in accordance with § 43(b) of the agreement. He now has been accorded this relief, but disagrees with the decision of the arbitrator. It is apparent that what plaintiff is attempting to do is to relitigate his grievance in this proceeding. This he cannot do when the collective bargaining agreement provides for final and binding arbitration of all disputes, absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith on the part of the Union or the employer. Cf. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.
 
 
 20
 The Memorandum of Understanding between General Motors and the Union under which the grievance was submitted to arbitration in the present case was in conformity with Section 43(b) of the collective bargaining agreement (footnote 3). Under this Memorandum the arbitrator was authorized to make a determination as to plaintiff's physical ability to perform the job of journeyman tinsmith either as of the date of the examination or as of November 11, 1958, or July 25, 1960.
 
 
 21
 The arbitrator found that: "this man is not a candidate for unlimited heavy manual labor." When asked for a clarification, he stated that he had carefully reviewed the Memorandum of Understanding and the physical requirements of the "tinsmith job" and reaffirmed his former conclusion as to plaintiff's inability to do that job.
 
 
 22
 Under the foregoing authorities the decision of the arbitrator is binding and conclusive upon plaintiff and the issue decided by the arbitrator cannot be relitigated in this proceeding.
 
 2) The Duty of Fair Representation[4]
 
 23
 It is now well settled that a "bargaining representative of employees has the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against any employee or group of employees." Trotter v. Amalgamated Ass'n of Street Electric Railway Employees, 309 F.2d 584, 586 (C.A. 6), cert. denied, 372 U.S. 943, 83 S.Ct. 936, 9 L.Ed. 2d 968. To like effect see Steele v. L. & N. R.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Mount v. Grand International Brotherhood of Locomotive Engineers, 226 F.2d 604 (C.A. 6), cert. denied, 350 U.S. 967, 76 S.Ct. 436, 100 L.Ed. 839; Ostrofsky v. United Steelworkers, 171 F.Supp. 782 (D.Md.), aff'd 273 F.2d 614, cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732.
 
 
 24
 "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048.
 
 
 25
 "Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. * * To remove or gag the union in these cases would surely weaken the collective bargaining and grievance process." Humphrey v. Moore, 375 U.S. 335, 349-350, 84 S.Ct. 363, 372, 11 L. Ed.2d 370, rehearing denied, 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655.
 
 Similarly this court has held:
 
 26
 "* * * that the collective bargaining power of the union was not exhausted upon the execution of the collective bargaining contract, that considering the statutory authority of the union as the bargaining agent, the language of the collective bargaining agreement and the undisputed facts as to the good faith bargaining between the union and the defendant, it was within the authority of the union as bargaining agent to agree with defendant that there was just cause for the discharge [of the employee] and that it was not a breach of contract by the defendant." Simmons v. Union News Co., 341 F.2d 531 (C.A. 6), cert. denied, 382 U.S. 884, 86 S.Ct. 165, 15 L.Ed.2d 125.
 
 
 27
 See also Hildreth v. Union News Co., 315 F.2d 548 (C.A. 6), cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59; Union News Co. v. Hildreth, 295 F.2d 658 (C.A. 6).
 
 
 28
 A Union has "the authority, acting in the collective interest of those whom it represented, to agree with the defendant [employer] on necessary corrective measures to be taken without such action being treated as a breach of the collective bargaining agreement." Hildreth v. Union News Co., 315 F.2d 548, 551 (C.A. 6), cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59.[5] An action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith. Williams v. Kroger Co., 369 F.2d 85 (C.A. 6), (1966).[6]
 
 
 29
 Whether a bargaining representative has acted fairly, impartially and without hostile discrimination depends upon the facts of each case. Pekar v. Local 181, International Brewery Workers, 311 F.2d 628 (C.A. 6), cert. denied, 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414; Trotter v. Amalgamated Association of Street Electric Railway Employees, 309 F.2d 584 (C.A. 6), cert. denied, 372 U.S. 943, 83 S.Ct. 936, 9 L.Ed.2d 968.
 
 
 30
 The essence of plaintiff's complaint in regard to the Union's breach of their duty of fair representation is that the referral of his grievance to the arbitrator was a "sham and a fraud of his rights under the collective bargaining agreement and in no wise binding upon him," since the presentation of this grievance to the arbitrator was not reasonably contemporaneous with his application for return to work.[7]
 
 
 31
 The allegations of a complaint alleging the breach of a Union's duty of fair representation must contain more than "conclusory statements alleging discrimination. In particular plaintiffs must make a showing that the action or inaction of the statutory representative complained of was motivated by bad faith, for the gravamen of the rule is `hostile discrimination'." Gainey v. Brotherhood of Railway Employees, 313 F.2d 318, 323 (C.A. 3). "[C]onclusory words * * * without a concomitant showing of lack of good faith [does] not set forth a claim." Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186 (C.A. 9), cert. denied, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229. See also Colbert v. Brotherhood of Trainmen, 206 F. 2d 9 (C.A. 9), cert. denied, 346 U.S. 931, 74 S.Ct. 320, 98 L.Ed. 422; Ostrofsky v. United Steelworkers, 171 F.Supp. 782 (D. Md.) aff'd 273 F.2d 614, cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732.
 
 
 32
 Since this case is before this court on defendants' motions for summary judgment, we are not limited to the allegations of plaintiff's complaint. Cf. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. We find that:
 
 
 33
 "Nowhere in the material outside the complaint which was examined by the district court do facts or allegations appear which show or tend to show any improper motive or purposeful discrimination. The entire record before this court * * * does nothing more than establish that there is a difference of opinion * * *" between the parties. Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186-187, (C.A. 9), cert. denied, 371 U.S. 920, 83 S.Ct. 288, 9 L.Ed.2d 229.[8]
 
 
 34
 This finding disposes of the claims against General Motors as well as the claims against the defendant Unions. Ostrofsky v. United Steelworkers, 171 F. Supp. 782, aff'd 273 F.2d 614, cert. denied, 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed. 2d 1732. We therefore hold that in light of the foregoing, defendants' motions for summary judgment should have been granted.
 
 
 35
 Reversed and remanded.
 
 
 
 Notes:
 
 
 *
 Honorable Noel P. Fox, United States District Judge for the Western District of Michigan. After the hearing Judge Fox recused himself and did not participate in the decision of this case
 
 
 [1]
 The district judge later amended his order denying summary judgment, noting that there are present "substantial questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from said order may materially advance the ultimate termination of the action." This court, finding the application for interlocutory appeal well founded, permitted an appeal to be taken from said order
 
 
 [2]
 In United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, like the instant case, the collective bargaining agreements provided that any dispute or issue would be settled by arbitration. 363 U.S. at 565, fn. 1, 80 S.Ct. 1343
 
 
 [3]
 "Step Four. Appeal to Impartial Umpire
 "43 In the event of failure to adjust the case at this point, it may be appealed to the impartial Umpire, providing it is the type of case on which the Umpire is authorized to rule.
 * * * * *
 "43(b) Any case appealed to the Umpire involving a continuing refusal of Management to return an employee to work from sick leave of absence which has continued for twenty-six (26) weeks or longer, by reason of the medical findings of a physician or physicians acting for the Corporation, will be reviewed between the Corporation and the International Union, if such findings are in conflict with the findings of the employee's personal physician with respect to whether the employee is able to do a job to which he is entitled in line with his seniority. Failing to resolve the question, the parties may by mutual agreement, refer the employee to a clinic or physician mutually agreed upon whose decision with respect to whether the employee is or is not able to do a job to which he is entitled in line with his seniority shall be final and binding upon the Union, the employee involved and the Corporation. The expense of such examination shall be paid one-half by the Corporation and one-half by the Union. Any retroactive pay due the employee shall be limited to a period commencing with the date of filing of the grievance, or the date the employee became able to do a job to which he is entitled in line with his seniority whichever is the later."
 
 
 [4]
 See Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, 197 (C.A. 4), Sobeloff, Chief Judge, for an excellent discussion of the Duty of Fair Representation
 
 
 [5]
 It is not necessary under the facts of this case to reach the question of whether or not there is a different standard to be applied in judging the actions of a union in regard to the negotiation as opposed to the administration of a collective bargaining agreement. But see Blumrosen, The Worker and Three Phases of Unionism; Administrative and Judicial Control of the Worker-Union Relationship, 61 Mich.L.Rev. 1435. Compare Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 with Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 739-740, 65 S.Ct. 1282, 89 L.Ed. 1886
 
 
 [6]
 "To say in such cases that the union's compliance with the duty of fair representation turns on whether the Board or a court agrees with the union's interpretation of the contract is to transfer the function of interpretation from the contracting parties to the Board or the courts. It is simply impossible to square that result with Congress' unequivocal policy of having the contracting parties, wherever they can reach agreement, have the final interpretative word themselves." Ratner, Some Contemporary Observations on Section 301, 52 Georgetown L.J. 260, 283
 
 
 [7]
 Paragraph 20 of the first count of the complaint asserts that plaintiff:
 "* * * is informed and believes, and therefore alleges the fact to be, that this referral was a sham and a fraud on his rights under the collective bargaining agreement and in no wise binding upon him for the following reasons:
 "(a) Because the referral was not reasonably contemporaneous with his application to return to work and, therefore, not such a referral as is contemplated by the collective bargaining agreement;
 "(b) Because it was impossible, by May, 1962, to determine what plaintiff's physical condition was as of the end of 1958, the crucial time hereunder;
 "(c) Because this physician made no finding as to plaintiff's physical condition as of the end of 1958; and
 "(d) Because the conclusions of this physician to the effect that plaintiff, as of November 7, 1962, `is not a candidate for reassignment' to a job as tinsmith `J' is not supported by his own report of his physical examination of plaintiff, but is so at variance with his findings as to be arbitrary and fraudulent."
 
 
 [8]
 Although it is not determinative of good faith on the part of the Union, it is worthy of note that plaintiff's first suit, under § 301, was brought for the express purpose of compelling the arbitration which is the subject of the instant suit. The grievance was submitted to arbitration some four months after plaintiff's first suit was dismissed for lack of jurisdiction