516 F.2d 902
 10 Fair Empl.Prac.Cas. 1176, 9 Empl. Prac.
Dec. P 9939,
76 Lab.Cas. P 10,670
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Boris Thomas, Plaintiff-Appellant
v.
Ford Motor Company et al., Defendants-Appellees
 No. 74-1272.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1975.
 
 Before PECK, LIVELY and ENGEL, Circuit Judges.
 
 
 1
 LIVELY, C.J.
 
 
 2
 This is an appeal from summary judgment entered in favor of all defendants by the district court. Plaintiff is a long-time employee of Ford Motor Company (Ford) who was working as an electrician in the slab mill of the Ford rolling mill unit when the shut down of a blast furnace caused a reduction in personnel needs beginning February 22, 1971. The employment rights of the various workers affected by the shut down were determined by the provisions of a "local agreement" which was entered into by Ford and the Union[1] effective December 21, 1970. The local agreement was amplified by several letter contracts.
 
 
 3
 As a result of the shut down a number of employees with lower seniority than that of plaintiff were laid off until approximately May 3, 1971. Although he was not laid off and was able to continue to work during the entire period of the shut down, plaintiff charged in his complaint that he was the victim of discrimination in that persons with low seniority were permitted to take a lay off of approximately 75 days and return to high-incentive-area jobs, whereas he and others in the same unit who had higher seniority were required instead to "bump" within the steel division and in effect lost their seniority in the slab mill.
 
 
 4
 Plaintiff instituted grievance procedures, and also filed three complaints with the Equal Employment Opportunity Commission (EEOC) on the basis that several of the high-seniority electricians who lost their slab-mill seniority were black, although plaintiff himself is white. Plaintiff's grievance was denied and when the Union refused to prosecute it further he appealed both within the Union and to the Public Review Board which is made up entirely of public members having no connection with the Union. He also filed a complaint with the National Labor Relations Board. The Regional Director and General Counsel of the Board found that the evidence submitted by Thomas was "insufficient to establish that the Company and Union conspired to discriminate against you by an unfair application of the seniority rules, or to sustain the burden of proving that the Union failed to fairly represent you by not fully processing your grievance." The only result of plaintiff's charges with EEOC was that the Commission issued a "right to sue" letter.
 
 
 5
 Plaintiff filed two actions in the district court, naming both Ford and the Union as defendants in both actions. The first suit was an action brought under Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. Sec. 185. The second suit was brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Sec. 2000e et seq.; 42 U.S.C. Secs. 1981 and 1983; and the Equal Protection Clause of the Fourteenth Amendment. The underlying charge in both complaints is that the local agreement of December 21, 1970 provided illegal deviations from the terms of the collective bargaining agreement (master contract) in force between Ford and the Union. More specifically, it was claimed in both complaints that Article VIII Sec. 21 (Section 21) of the master contract permitted temporary lay offs other than for model changes only for periods of 12 days or less. Insisting that the reductions which were required by the shut down of the blast furnace were "temporary lay offs" within provisions of Section 21, the plaintiff claimed that provisions in the local agreement for dealing with a lay off of approximately 75 days were contrary to the terms of the master contract and were not permitted under it.
 
 
 6
 In the action brought under LMRA, Sec. 301, the plaintiff sought damages and an order restoring him to his former high-incentive job. In the Title VII action, plaintiff sought a declaratory judgment that the defendants had "unlawfully discriminated against Plaintiff, Negro employees and others of the Ford Motor Company at the Rouge Plant Steel Division in Dearborn, Michigan, and that Defendant Union violated its duty of fair representation to these same workers." The complaint also sought injunctive relief. The district court consolidated the actions for trial. The defendant Ford answered the first complaint and filed a motion to dismiss both complaints after they had been consolidated. The Union filed a motion to dismiss, accompanied by an affidavit together with a number of documents and a suggestion that the court treat the motion to dismiss as a motion for summary judgment. The plaintiff filed a "Brief and Answer" to each of the motions to dismiss. No counter affidavit or documentary evidence of any kind was filed by the plaintiff.
 
 
 7
 No testimony was taken in either case, but the court held three hearings in the consolidated actions. The position of the defendants, supported by various documents which accompanied the affidavit of the Union, was that Ford and the Union had made a permissible special arrangement for the reduction in employment occasioned by the shut down of the blast furnace and that it in no way contravened the master contract or the seniority rights of the plaintiff. At the conclusion of the second hearing, the District Judge addressed counsel for the plaintiff and specifically asked if he was satisfied that he had furnished appropriate responses to each point raised by the defendants. Counsel replied that the points had been well covered in responsive fashion in his answer. The court then advised that he would take the matter under advisement and decide it. This hearing occurred on August 13, 1973.[2] On November 1, 1973 the court conducted a further hearing in chambers, which was reported. At that hearing the court asked counsel for the plaintiff if he had any further papers to submit, and he replied that he did not. The court remarked that he had not indicated yet whether he would consider matters outside the record and decide the case under Rule 56 and stated that the purpose of the hearing was to afford "an opportunity--." At this point, counsel for plaintiff broke in and stated: "We have nothing else, Your Honor." The court then announced that it would proceed to regard the motion to dismiss as a motion under Rule 56 and dispose of it. Thereafter the court granted summary judgment to both defendants and filed a memorandum opinion in which he treated all of the issues thoroughly. We affirm.
 
 
 8
 On appeal, plaintiff states that the issue is whether the district court could enter summary judgment "when Plaintiff has had no opportunity to adduce proofs to sustain his allegations, even though witnesses had been subpoened, but no discovery had and no trial de novo was held?" (sic) On May 25, 1973 the plaintiff gave notice to take depositions of a Ford labor relations representative and several union representatives in the rolling mill unit. The depositions were set for June 5, 1973, but were never taken. The only explanation for this which appears in the record is a letter from the assistant general counsel of the Union to plaintiff's attorney which states in part: "Based on our previous understanding that discovery would wait until the judge rules on our motions to dismiss the above cases, I have advised those subpoenaed not to appear on June 5." Since no protective order was issued, it would appear that the plaintiff did not take the depositions because of an agreement to defer them until after the court had ruled.
 
 
 9
 At the June 25th hearing the attorney for the plaintiff stated that "the proper response on the factual issue is some discovery as to the qualifications and seniority of the skilled electricians in February." The court also indicated that it required discovery to clear up a factual dispute as to whether different conditions existed in March 1971 which were responsible for a different handling of a reduction in work forces which took place in the same work unit at that time.
 
 
 10
 At the August 13th hearing counsel for Ford stated that he had furnished plaintiff's counsel with the materials upon which the NLRB had made its determinations. Referring to Ford's position at the previous hearing that different circumstances in March 1971 justified a different method of dealing with force reductions than that employed in February, counsel for plaintiff stated:
 
 
 11
 "We believe that none of those circumstances allows a deviation which he alleges in his letter, and we believe that there is no provision for such a thing as a 75-day temporary layoff, as--or longer temporary layoff, as occurred, and that the factual claim is sufficient for us to go into a discovery stage, and document, at great length, exactly the--the basis for damages." Counsel for Ford responded that even if it were assumed that everything in the complaint were true there would be no factual dispute because the admitted actions of Ford and the Union did not constitute a violation of the master contract. Since plaintiff's pleadings and statements of counsel indicated that the entire case was based on the theory that the local agreement which provided a procedure that permitted some low seniority workers to return to high-incentive jobs while denying the same right to plaintiff contravened the master plan, the defendants took the position that no material factual issues existed and that the court was required only to decide a question of law.
 
 
 12
 While it is true that the need for discovery was urged by plaintiff's counsel and noted by the court at an earlier hearing, neither at the end of the August 13th hearing when the court stated that he was taking the matter under advisement for decision nor at the November 1st hearing when he announced that he would proceed to treat the motion to dismiss as a motion for summary judgment and dispose of it--after obtaining from plaintiff's counsel on each occasion an acknowledgement that he had nothing further to offer--did plaintiff in any way object to the case being submitted for decision on the ground that he had been denied the right of discovery. Having assured the District Judge that he had nothing further to offer before the court took this case under advisement on a motion for summary judgment, plaintiff can not now say that summary judgment was improper because he had not pursued his discovery rights. Cf. Helvering v. Wood, 309 U.S. 344 (1940).
 
 
 13
 Although plaintiff was represented by counsel in the district court, he brought this appeal in pro per. At oral argument he was again represented, but by different counsel, and the court permitted arguments beyond the narrow question posed in plaintiff's brief. Aside from the discovery issue, this court has determined that the district court properly entered summary judgment on the record which was before it. Although the same factual situation underlies both law suits and plaintiff bases his charges of discrimination in both actions on the implementation of the local agreement which he claims was in contravention of the master contract, the two actions will be treated separately.
 
 The Labor Relations Dispute
 
 14
 Stripped of its verbiage, the complaint in the LMRA Section 301 action charges Ford with discrimination in employment practices and the Union with failure of its duty of fair representation of plaintiff's interests. An individual employee has standing to sue for enforcement of a collective bargaining agreement and may recover damages for breach of a union's duty of fair representation. Smith v. Evening News Association, 371 U.S. 195 (1962); Vaca v. Sipes, 386 U.S. 171 (1967). The Supreme Court held in Humphrey v. Moore, 375 U.S. 335, 348 (1964), that in order to prevail in a claim for breach of duty of fair representation a plaintiff must produce "substantial evidence of fraud, deceitful action or dishonest conduct." In Vaca v. Sipes, supra, at 193 it was stated that the proof must show "arbitrary or bad-faith conduct on the part of the Union." The only language in the complaint which could conceivably be construed as charging bad faith is contained in two separate sentences as follows:
 
 
 15
 "The absence of standards [in the local agreement] permits favoritism and nepotism for friends and relatives, while punishing others neither favored nor related, said punishment made possible by the arbitrary selection of various employees for discriminatory treatment."
 
 
 16
 and
 
 
 17
 "The effect of proceedings herein complained of by Plaintiff was discriminatory as directed against Plaintiff and others."
 
 
 18
 In its opinion, the district court held that the plaintiff had exhausted his grievance procedure to the extent required and that his complaint stated a claim for relief under Section 301 of LMRA. Turning then to "matters outside the pleading ... presented to and not excluded by the court," Rule 12(b), Fed.R.Civ.P., the court made this finding: "It appears to be a certainty that plaintiff cannot meet the evidentiary standard required for proof of unfair representation on grounds of nepotism." Having found that no genuine issue existed as to the only claim contained in the complaint the court then proceeded to determine whether the defendants were entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.
 
 
 19
 Upon examining Article VIII Sec. 21 of the master agreement between Ford and the Union, the court found that this section did not cover the specific situation which resulted from the February shut down of the blast furnace. It was further held that the local agreement of which plaintiff complains was required to deal with this situation and that, as a matter of law, it did not violate Section 21. The court noted that seniority rights are not conferred by law, but only guarantee to an individual worker whatever priority the collective bargaining agreement provides. Since plaintiff had failed to indicate any provisions of the collective bargaining agreement establishing the rights that he claims were violated by the special local agreement, it was held that no issue was presented for trial. In the absence of a contrary provision in the master contract Ford and the Union were free to meet the situation caused by the shut down by local agreement. The Union's refusal to prosecute plaintiff's grievance was held not to have been based on bad faith or personal animus.
 
 
 20
 In Balowski v. International Union, UAW and Local 735, 372 F.2d 829 (1967), this court upheld summary judgment granted in favor of a union and an employer in a case alleging breach of the duty of fair representation. In the Balowski opinion, the court reviewed a number of cases dealing with the duty of fair representation and noted that a union must act "without hostile discrimination against any employee or group of employees," that it is allowed "[a] wide range of reasonableness ... subject always to complete good faith and honesty of purpose in the exercise of its discretion" and that it is not required always to agree with an employee who presents a grievance. Id. at 833-34. Quoting from Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186-87 (9th Cir.), cert. denied, 371 U.S. 920 (1962), the court held that both the union and employer were entitled to summary judgment when "[t]he entire record before this court ... does nothing more than establish that there is a difference of opinion ..." concerning seniority. This language describes the true situation in this case. Other than mere conclusory statements contained in his two pleadings entitled "Brief and Answer," which have no probative value in summary judgment proceedings, see Bsharah v. Eltra Corporation, 394 F.2d 502 (6th Cir.1968), the plaintiff presented nothing to the court except a disagreement between himself on the one hand and the union and Ford on the other as to the application of Article VIII Sec. 21 of the master contract to the situation which led to his change in work assignment. Assuming that all of the facts stated by plaintiff, as opposed to the unsupported allegations of discrimination, were true, the defendants were entitled to judgment as a matter of law.
 
 The Civil Rights Action
 
 21
 In dealing with the civil rights action the district court made a number of holdings which have not been questioned on appeal, either in brief or oral argument. The court held that the complaint did not state a cause of action either under 42 U.S.C. Sec. 1983 or the Fourteenth Amendment since it is not claimed that any of the acts of the defendants were performed under color of law or constituted state action. The court also held that plaintiff had no right to proceed in a class action under Rule 23. The court then proceeded to examine the action as one brought for relief against racial discrimination in employment under 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act of 1964, and held:
 
 
 22
 "Of course plaintiff may still maintain his individual claim if it is properly framed and supported by a modicum of evidence. After careful consideration I find that it is neither. The language of the complaint is vague, conclusory, and thoroughly disingenuous. Plaintiff complains about the arrangements made for the shutdown, but does not explain how the facially neutral criteria employed there were in esse racially discriminatory. His broad allegations of discrimination are nothing more than bald and unilluminating conclusions of law. It seems that great care was exercised to avoid revealing who, other than plaintiff, was disadvantaged; what acts, if any, demonstrated racial discrimination; and how those acts, if any, demonstrated racial discrimination; and how those acts justify that inference. The vague suggestions and innuendo of the complaint are wholly unacceptable."
 
 
 23
 The court went on to state that even if this complaint were not subject to dismissal for failure to state a claim, the defendants would be entitled to summary judgment because on the whole record the court found that plaintiff "lacks any evidence which would support a charge of racial discrimination." This complaint also charged breach of contract and duty of fair representation, which were similar to the claims in the LMRA action except that defendant's acts were claimed to have been based on racial discrimination, and the court found that these charges were totally without support.
 
 
 24
 Plaintiff places his principal reliance on Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), where the Supreme Court held that final responsibility for enforcement of Title VII is vested in the federal courts. The issue in that case was whether the plaintiff was foreclosed from seeking relief in a federal court pursuant to 42 U.S.C. Sec. 2000e et seq. because of an adverse ruling in an arbitration proceeding involving the same complaint. The court held that the plaintiff in such a situation is not barred from proceeding in court and pointed out that even a finding by the Equal Employment Opportunity Commission of no reasonable cause to believe that the Act has been violated does not prevent a plaintiff from pursuing his remedy in court. Nowhere in Gardner-Denver did the Court hold or intimate that after an action for discrimination in employment is brought in a federal court the court may not dispose of the action by summary judgment if such proceedings are otherwise justified by the record. In Marlowe v. Fisher Body, 489 F.2d 1057, 1066 (1973), this court reiterated its approval of the following language from Scher v. Board of Education of West Orange, 424 F.2d 741, 744 (3rd Cir.1970):
 
 
 25
 "A case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.
 
 
 26
 "The civil rights complaint in this case contains the following language:
 
 
 27
 "7. This is a proceeding for a declaratory judgment as to Plaintiffs' rights and also for preliminary and permanent injunctions restraining Defendants from maintaining a policy, practice, custom or usage of:
 
 
 28
 "(a) Discriminating against Plaintiff and other employees because of race or color and without respect to compensation terms, conditions, seniority, job status, and privileges of employment, said Plaintiff and other employees constituting a class composed almost entirely of Negro persons.
 
 
 29
 "(b) Limiting, transferring, segregating, and classifying employees of the Ford Motor Company who are members of International Union, UAW, a union organization, and Local 600, UAW, a union organization in ways which deprive Plaintiff, Negroes and other persons in his class of equal employment opportunities and otherwise affect their status as employees because of race or color.
 
 
 30
 "8. All matters regarding hiring, terms, conditions and privileges of employment of Plaintiff and the class he represents have been at all times material to this action, governed by collective bargaining agreements entered into between Defendant Union and Defendant Company.
 
 
 31
 "9. In spite of the terms of the aforementioned agreements, the Defendants have jointly and knowingly established a hiring, promotional and seniority system, the design, intent and purpose of which is to continue and preserve, and which has and continues to have the effect of continuing and preserving the Defendants' policy, practice, custom, and usage of limiting the employees for employment opportunities, including but not limited to:
 
 
 32
 "(a) The denial of equal opportunity to Plaintiff, Negro employees and others for reinstatement, and/or transfer on the same and as favorable a basis as white employees.
 
 
 33
 "(b) The failure of Defendant International Union, UAW, a union organization, and Local 600, UAW, a union organization, to fairly represent Plaintiff, Negro employees and others on grievances and in collective bargaining."
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 Standing alone, the quoted language would state a claim for relief. However, the remainder of the complaint is a recitation of plaintiff's charge that Ford and the Union, by the special local agreement and its implementation, violated the master contract. The only difference between the remainder of the complaint and the complaint in the Section 301 action is the addition of the allegation that the actions of the defendants "unreasonably, unfairly and calculatedly jeopardize the jobs of all members of the class and tend to deprive Plaintiff, Negro employees and others from employment of equal opportunities and otherwise adversely affect their status or prospective status as employees."
 
 
 37
 The coupling of the words "Plaintiff, Negro employees and others" seems designed solely to imply that racially discriminatory practices were involved in the methods selected by Ford and the Union to deal with the cutback required by the closing of the blast furnace in the rolling mill unit. When viewed in light of the admitted fact that plaintiff is himself a Caucasian and that no Negro employee joined in any of his numerous complaints about the handling of the February 22nd shutdown or in either of the actions in the district court and by the further fact that no Negro alleged to have been discriminated against by these actions is identified either in the pleadings or in the other papers filed by plaintiff, the court was justified in concluding that "Plaintiff's pleadings are evasive for the simple reason that he lacks any evidence which would support a charge of racial discrimination."
 
 
 38
 Although the argument was never made in the district court, on appeal the plaintiff maintains that it was impossible for him to produce evidence of discrimination without discovery because all of the facts were in the possession of the defendants. We have previously noted that on at least two occasions prior to taking the case under submission for disposition under Rule 56, the court inquired of counsel for the plaintiff if he had anything further to offer and received a negative response. If the reasons which plaintiff now urges for his failure to produce evidence of discrimination were valid, he could have protected himself from an unwarranted entry of summary judgment by invoking Rule 56(f), Fed.R.Civ.P., which reads as follows:
 
 
 39
 "(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
 
 
 40
 The district court correctly determined that there were no genuine issues as to any material fact in either case and that the defendants were entitled to judgment as a matter of law.
 
 
 41
 The judgment of the district court is affirmed. No costs are taxed. Each party will bear its own costs on this appeal.
 
 
 
 [1]
 The International and Local will be referred to collectively throughout this opinion as the Union
 
 
 [2]
 The transcript shows that the hearing was held on January 22, 1974. The reporter has certified that this is an error